[Crim. No. 3733. In Bank.—July 30, 1934.]

THE PEOPLE, Respondent, v. O. J. TWEDT, Appellant.

Thomas F. Lopez and G. W. Cartwright for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

THE COURT.—A hearing was granted in this case after decision by the District Court of Appeal, Fourth Appellate District. Upon further consideration, we hereby adopt the following portions of the opinion of Mr. Justice Marks as part of the opinion of this court:

"Appellant was charged by an information filed by the district attorney of Fresno county on May 19, 1933, with three separate offenses consisting of violations of the Corporate Securities Act. The first count alleges that on or about the 20th day of May, 1930, in Fresno county, he *offered for sale,* to Eveline Kloster, securities of the Linda Mineral Products Company without having a permit from the commissioner of corporations. The second count alleges that at the same time and place he *negotiated for the sale* of securities of the same company with Eveline Kloster without any such permit. The third count alleges that at the same time and place he *sold* securities of the same

company to Eveline Kloster without the necessary permit. It is further alleged in the information 'that the offenses set out in the three counts of this information are different offenses arising out of the same transaction and connected in their commission'. Appellant was found guilty on all three counts and was sentenced on each of them to confinement in the state penitentiary. His motions for new trial and for arrest of judgment were denied. He is here on appeal from the judgment and orders denying his motions.

"The Linda Mineral Products Company is a California corporation. On September 17, 1928, it was granted a permit to sell certain of its capital stock. This permit was suspended on January 4, 1930. An amended permit was issued to it on May 21, 1930. It is admitted by counsel for both parties that the only criminal acts which may be considered here in support of the judgment are those which were committed on May 19, and May 20, 1930, as the statute of limitations had run against all prior acts and the permit of the commissioner of corporations became effective on May 21, 1930, so that offering for sale, negotiating for the sale of, or selling the stock of the Linda Mineral Products Company was lawful on and after that date.

"Miss Kloster, who was a teacher in the Fresno High School, had a brother who had become acquainted with a sister of appellant while attending a university. At the request of her brother, Miss Kloster called upon Miss Twedt and her mother at their residence in Los Angeles during the Christmas holidays of 1929. She there met appellant and heard him recount in the most glowing terms the prospects for the financial success of the Linda Mineral Products Company, of which he was president. In 1930 Miss Kloster called upon Miss Twedt and her mother at their home in Oakland during the Easter school vacation of that year. She did not then see appellant.

"About May 2, 1930, while Miss Kloster was teaching her class in Fresno she was called by appellant over a long-distance telephone, probably from San Francisco. He told her that the Linda Mineral Products Company had been suddenly disappointed in raising $5,000 from another party; that it was financially embarrassed because of the failure to receive this money and that it needed it badly. He

asked her to purchase stock in the company to this amount. She replied that she did not have the money. He then asked her if the members of her family could not make up the amount as he did not want to place the stock in small amounts with a number of purchasers. The conversation ended by appellant asking Miss Kloster to think it over. She sent him a night letter on the same evening, the contents of which are not in the record.

"About May 6, 1930, Miss Kloster received a telegram from appellant advising her that he would arrive in Fresno at 10 o'clock that evening and asking to see her. Appellant had a long conference with Miss Kloster and one of her sisters that evening when the prospects of the company and the sale of its stock were discussed in considerable detail. Miss Kloster informed him that she might buy $700 worth of the stock, one of her sisters $300 and a Miss Smith $500. Appellant still wanted to sell $5,000 worth in a single transaction and again asked that the matter be further considered.

"About May 13, Miss Kloster received another telegram from appellant asking for another appointment with her in Fresno at 10 o'clock that night. He then informed Miss Kloster that he had decided to let the three women have the $1,500 worth of stock and wanted the check immediately. Miss Kloster informed him that her money was not immediately available; that she hoped to be able to get it together so that it might be sent by the 20th of May. He suggested a postdated check, but it was not given him. On Saturday, May 17, 1930, Miss Kloster sent appellant a special delivery letter to his Oakland residence address which he received the next day, the contents of which appellant described as follows: 'She said she had talked to Dorothy Smith the next morning and that Dorothy and I agreed, was very happy to put in $500, and that—so if it was all right with me, why then she would take $500 worth of stock. . . . Oh, yes, she was going to take,—she and her sister had agreed, decided to take the stock, and also that if it was all right, why that they would take that, and also Dorothy Smith would take it. . . . She said that she did— that she would send the money, that they had decided to take the stock, and that she was going to send the money on Tuesday, as I recall it. Q. She said—do you recall

whether there was any mention as to the amount of money?
A. Yes, there was. They were taking $1500 worth.'

"Appellant replied to this letter by one dated May 18, 1930, and which was postmarked at Oakland, California, May 19, 1930, at 12:30 p. m. This letter contains the following: 'Sending the "Proceeds" on Tues. as you state is perfectly alright. It would have been O. K. to have sent the check because I would have held it till you told me it was good but is it just as O. K.' 'Tuesday' was May 20, 1930. On the afternoon of that day Miss Kloster and Miss Smith enclosed two checks in an envelope, one signed by the former for $1,000, and one signed by the latter for $500, in payment of the stock, and mailed them in Fresno. They were received and cashed the next day in San Francisco. The stock was issued and delivered in June, 1930.

"Our study of the evidence leads to the following conclusions: 1. On May 2, 1930, appellant, over the telephone, offered to sell Miss Kloster $5,000 worth of the stock of the Linda Mineral Products Company. This offer was rejected. 2. On May 6, 1930, in Fresno, appellant renewed the offer to sell the same amount of stock to Miss Kloster. She rejected this offer, but did discuss with him the purchase of $1,500 worth of stock, $700 for herself, $300 for her sister, and $500 for Miss Smith. Appellant did not accept this offer of purchase, if it could be so termed, and left asking Miss Kloster to think the matter over further. 3. On May 13, 1930, appellant, in Fresno, offered to sell Miss Kloster $1,500 worth of the stock of the corporation if the purchase price was paid in cash, or if a post-dated check was given him for it. This offer was rejected as Miss Kloster did not have the cash available and would not give him a post-dated check. 4. By her letter of May 17th, 1930, Miss Kloster offered to purchase $1,500 worth of the stock, provided she could pay for it on May 20, 1930. This offer was accepted by appellant in his letter dated May 18, 1930, postmarked May 19, 1930. 5. The checks in payment of the stock were mailed May 20, 1930, cashed on May 21, 1930, and the stock issued in June, 1930.

"The provisions of the Civil Code in effect at the time of the transaction provided that 'an agreement for sale is ... a mutual agreement to sell and buy'. (Sec. 1726.) 'An agreement to sell and buy is a contract by which one engages, to transfer the title to a certain thing to another,

who engages to accept the same from him and to pay a price·therefor.' (Sec. 1729.)

 ''It is evident .that the conversations between appellant and Miss Kloster on the second, sixth, and the thirteenth days of May did not result in any contract of sale, but in rejections of the offers to sell by Miss Kloster. 'A communication from the offeree to the offeror, stating in effect that the offeree declines to accept the offer is a rejection.' 'A counter-offer by the offeree, relating to the same matter as the original offer, is a rejection of the original offer, unless the offeror in his offer, or the offeree in the counter-offer states that in spite of the counter-offer the original offer shall not be terminated.' (Restatement of the Law. Contracts, secs. 37, 38.)

''The first time the minds of the parties met on the transaction was in the exchange of the letters dated May 17, and May 18, 1930. There arose from these letters an agreement to buy and sell. It makes no difference here that the acceptance was mailed in Alameda county and the case tried in Fresno county. Where a public offense is committed, part in one county and part in another, the jurisdiction of the case is in either county. (Sec. 781, Pen. Code; *United States* v. *Ford,* 3 Fed. (2d) 643–647; *People* v. *Boggess,* 194 Cal. 212 [228 Pac. 448]; *People* v. *Bocchio,* 80 Cal. App. 138 [251 Pac. 672].)

''In 6 California Jurisprudence, 57, it is said: 'When the parties to a proposed contract have themselves fixed the manner in which their assent is to be manifested, assent in any other mode will not be presumed. But where no condition is provided by the proposer concerning the communication of the acceptance, any reasonable and usual mode may be adopted, and consent will be deemed to have been fully communicated between the parties as soon as the acceptance is put in the course of transmission, and beyond the control of the party accepting. A telegram accepting an offer takes effect on its deposit for transmission. And it seems to be settled that when the proposal is unconditionally accepted by a letter deposited in the mail properly addressed to the proposer the contract is complete.'

• • • • • • • • • • • • • •

 ''Subdivision 8 of section 2 of the Corporate Securities Act in effect at the time of the transaction here

involved provided in part as follows: ' "Sale" or "sell" shall include every disposition, or attempt to dispose, of a security or interest in a security for value. . . . "Sale" or "sell" shall also include a contract of sale, an exchange, an attempt to sell, an option of sale, a solicitation of a sale, a subscription or an offer to sell, directly or by an agent, or a circular letter, advertisement or otherwise.' (Stats. 1929, p. 1251.)

"It is evident under this definition that an offer to sell stock must be included in the sale where one is made to the offeree. It is also difficult to understand how a sale can be completed without negotiations for it. It has long been the rule in California 'that cooperative acts constituting but one offense when committed by the same person at the same time, when combined, charge but one crime and but one punishment can be inflicted as one offense. "Where a statute makes two or more distinct acts connected with the same transaction indictable, each one of which may be considered as representing a stage in the same offense, it has in many cases been ruled they may be coupled in one count. Thus, setting up a gaming table, it has been said, may be an entire offense; keeping a gaming table and inducing others to bet upon it, may also constitute a distinct offense; for either, unconnected with the other, an indictment will lie. Yet when both are perpetrated by the same person, at the same time, they constitute but one offense, for which one count is sufficient, and for which but one penalty can be inflicted." (Wharton on Criminal Law. Approved in *People* v. *Shotwell*, 27 Cal. 394.)' (*People* v. *Clemett*, 208 Cal. 142 [280 Pac. 681].) See, also, *People* v. *Buchanan*, 106 Cal. App. (Supp.) 765 [288 Pac. 50], and *Schroeder* v. *United States*, 7 Fed. (2d) 60."

In examining the evidence to determine whether it supports the judgment, and in searching the record for error, it should be remembered that there is only a narrow period during which acts committed can now be deemed punishable. All charges of criminality arising out of the negotiations in the early part of May are barred by the statute of limitations. The convictions on the counts of offering and negotiating for sale are clearly improper, and the sole question is as to the propriety of the conviction on the count of actual sale

The letter of Miss Kloster, sent on May 17, 1930, was an offer to purchase the stock on the condition that she might pay for it on May 20th. Defendant's answer was an acceptance of the offer, and the contract of sale was complete upon posting of the letter of acceptance. Hence it is of great importance to fix definitely the time when the defendant's letter was posted. The letter was dated May 18, 1930, and if deposited in the mail on this date, no conviction could be had, for the statute of limitations had run. It bore a postmarked date of May 19, 1930, and if deposited on that date, would have warranted a conviction. The rule seems generally recognized, though with some dissent, that in computing time, the day of commission of the offense is excluded. This is the rule in civil cases, and no compelling reason for a different rule in criminal cases has been advanced. (See Cal. Code Civ. Proc., sec. 12; 16 C. J. 230.) On this theory, the statute had not run if the letter was deposited in the mail on the date it was postmarked, and perhaps, from the evidence before it, the jury might have inferred that this was the case.

But the record shows that the case was tried on another theory, and this fact resulted in manifest injustice to defendant, preventing a fair trial, as will hereinafter appear. The prosecution in the court below proceeded upon the theory that the essential date, upon which the crime was committed, was May 20th. The statements of the prosecution clearly showed such a limitation. In consonance with this theory, the trial court instructed the jury that the 20th was the only date; and the 20th was within the period of the statute of limitations, as we have seen. But the evidence shows nothing more than the mailing of a letter by Miss Kloster with the money on that date. The actual contract was completed when defendant's letter was posted —either on the 18th or the 19th. The sending of the money was not a necessary part of the making of the contract, any more than the delivery of the stock, which did not take place until June. Hence the evidence lends no support to the conclusion that a crime was committed on the 20th. Yet because of the erroneous theory and instructions, defendant applied himself to the disproof of this theory alone, and made no effort to disprove a contract completed on the 19th.

It is entirely possible, and defendant so contends, that in the event the question of a possible conviction based upon a contract on the 19th were presented, he might produce evidence to show the actual time of posting of the letter, and might be able to establish its posting on the 18th, which would render a conviction impossible. It therefore appears that the erroneous theory of the prosecution and the trial court seriously prejudiced the defendant and prevented a fair trial.

The judgment and order denying a new trial are reversed.