[Crim. No. 3252.   Second  Appellate  District,  Division  Two.—November  17,  1939.]

THE  PEOPLE,  Respondent,  v.  PERCY  FLUMERFELT
et al., Appellants.

Harry W. Dudley and J. H. Morris for Appellants.

Earl Warren, Attorney-General, and Warner I. Praul, Deputy Attorney-General, for Respondent.

WOOD, J.—Defendants Flumerfelt and Ardelle were convicted of the crime of grand theft at a trial before the court without a jury. Both defendants appeal from the judgment of conviction and from the order denying their motion for a new trial. At the same trial defendant Ardelle was convicted of the crime of violating the Corporate Securities Act and she has appealed from the judgment and from the order denying her motion for a new trial.

From the evidence presented by the prosecution it appears that defendant Ardelle sold to Dr. A. G. Tibbetts for the sum of $2,000 stock in Acme Gold Dredging Company, a corporation, which, according to the representations of said defendant, owned a placer mine in the northern part of California. Thereafter both defendants told Dr. Tibbetts that they were buyers and sellers of gold in Mexico, that they had been in that business for a number of years and needed money to conduct the business. Thereupon Dr. Tibbetts delivered to defendant Ardelle the sum of $450. Thereafter defendants told Dr. Tibbetts that the gold in Mexico had accumulated to such an extent that they did not have enough money to handle it. At their request Dr. Tibbetts delivered to them the sum of $2,000 on July 16, 1936. About five weeks later defendants returned to Los Angeles and told Dr. Tibbetts that they had run across some Indians in Mexico who had more gold than they had ever dreamed of, defendant saying ''and inside there were Indians standing all around the room, and in one corner, on the floor, there were sacks and bars of gold''. Defendants told Dr. Tibbetts that they could not get any of the bars of gold because the Indians would not sell less than $25,000 worth at a time and that they had returned to raise this sum. They told Dr. Tibbetts that $7,000 was the lowest sum that they would need to handle the matter. Dr. Tibbetts then became suspicious and demanded the return of his money. The sum of $400 only was returned. About two weeks later defend-

ant Ardelle telegraphed Dr. Tibbetts requesting him to meet her at the Glendale airport. On the drive from the airport to her hotel defendant Ardelle opened her handbag and displayed what she said was one of the gold bars of which she had spoken previously, stating that it was valued at from $7,000 to $8,000. It was arranged that defendants should show the gold bar to Mrs. Tibbetts at her residence the following day. Dr. Tibbetts consulted a lawyer, who filed suit and made arrangements to attach the gold bar when it was brought to the Tibbetts residence. When the bar was brought to the Tibbetts residence a deputy sheriff seized it. After the deputy left defendant Ardelle turned to Dr. Tibbetts and said: ''Do you realize what you have done? You are sending us to prison''. Defendant Flumerfelt approached Dr. Tibbetts and said: ''I could choke you and choke you and choke you until you are dead''. However, no choking took place and shortly thereafter defendants departed. The bar which was attached was not gold.

▮ In regard to the charge of grand theft the only contention made by defendants on this appeal is that the court erred in admitting in evidence the bar which was seized by the sheriff under the writ of attachment, it being claimed that the bar was not seen by Dr. Tibbetts until after he had delivered the funds to defendants. There is no merit in this contention. The statements made by defendants after the bar was seized by the sheriff were admissible as indicating guilt of the offense for which they were on trial and it was proper for the prosecution to present to the court the circumstances under which the statements were made. Although it was not necessary to present the bar in court we cannot perceive how defendants were prejudiced by the presentation of the spurious bar to the judge presiding at the trial.

▮ In defense of the charge that she violated the Corporate Securities Act by knowingly issuing and selling three per cent of the capital stock in Acme Gold Dredging Company without having first received a permit from the Corporation Commissioner, defendant Ardelle offered to prove that prior to selling the stock she had instructed her attorney, Mr. Doran, to obtain a permit for the issuance and sale of the stock and that she had been informed by him that a permit had been granted. The ruling of the trial court in

sustaining an objection to the offer of proof was erroneous.

■ Section 18 of the Corporate Securities Act, as it was in force at the time of the transaction involved herein, was in part as follows: "Every officer, agent or employee of any company and every other person, who knowingly authorizes, directs, or aids in the issue or sale of, or issues or executes, or sells . . . any security . . . contrary to the provisions of this act . . . shall be punished . . . ". It will be noted that the section in question makes it a criminal offense to *knowingly* sell the stock without the necessary permit. In section 7 of the Penal Code, subd. 5, it is provided: "The word 'knowingly' imports only a knowledge that the facts exist which bring the act or omission within the provisions of this code. It does not require any knowledge of the unlawfulness of such act or omission". The rule that one who[7] has committed a criminal act cannot excuse herself by claiming ignorance of the law does not justify the court's ruling, for defendant does not base her defense upon ignorance of the law but rather upon misinformation as to the facts. She tried to prove that in selling the stock she acted upon information which had been imparted to her that the permit had in fact been issued. If she was informed by her attorney that a permit to sell the stock in question had been issued and in good faith acted upon such information it cannot be successfully contended that she knowingly sold the stock in violation of the Corporate Securities Act. Whether she received information that a permit had been issued and in good faith acted upon the information were questions for the determination of the trial court upon proper proof.

The prosecution relies upon *People* v. *McCalla*, 63 Cal. App. 783 [220 Pac. 436], but the facts of that case are easily distinguishable from the facts of the case now before us. There the defendant relied upon the advice of counsel that the instrument involved was not a "security" as defined by the Corporate Securities Act. It is significant that the court in holding that advice of counsel and a mistaken belief that the instrument was not a security within the meaning of the act did not constitute a valid defense, stated: "The term 'knowingly' means 'with knowledge,' and when used in a prohibitory statute is usually held to refer to a knowledge of the essential *facts;* and from such knowledge of the facts

the law presumes a knowledge of the legal consequences arising from the performance of the prohibited act.''

The judgments of conviction of the crime of grand theft, superior court action No. 73555, and the order denying the motions of defendants for a new trial in said action are affirmed. The judgment of conviction in superior court action No. 73554, by which defendant Ardelle was convicted of the crime of violation of the Corporate Securities Act, and the motion of said defendant for a new trial in said action are reversed and a new trial is ordered.

Moore, P. J., and McComb, J., concurred.