[Crim. No. 3463.   Second Dist., Div. One.—June 26, 1941.]

THE PEOPLE, Respondent, v. CLIFFORD RAYMOND STOWELL et al., Defendants; LEONARD McWHORTER, Appellant.

Robert E. Ford for Appellant.

Earl Warren, Attorney General, Frank Richards, Deputy Attorney General, John F. Dockweiler, District Attorney, and Jere J. Sullivan, Deputy District Attorney, for Respondent.

WHITE, J.—In an information filed by the district attorney of Los Angeles County, Clifford R. Stowell and Leonard McWhorter were accused in four counts of the crime of

grand theft and in three counts of violation of the Corporate Securities Act (Stats. 1917, p. 673, and amendments thereto; Deering's Gen. Laws, Act 3814). Defendant Stowell pleaded guilty to two counts of the information, and upon a plea of not guilty to all counts by defendant McWhorter the latter was tried before the court following valid waiver of a jury. After such trial defendant McWhorter stood convicted of the offenses of violation of the Corporate Securities Act as charged in counts 2 and 4 and acquitted on the remaining counts. After denial of his motion for a new trial and pronouncement of sentence, such last named defendant appealed from the judgment and the order denying him a new trial. It appears that the order denying the motion for a new trial was entered February 24, 1941, while the written, and only, notice of appeal therefrom was filed March 14, 1941. Not having been filed within the statutory time (Pen. Code, sec. 1239), the appeal from the order denying the motion for a new trial was ineffective, and the review by us must be confined therefore to the appeal from the judgment.

Stating the evidence in the light most favorable to the prosecution, as we are required to do following a guilty verdict, it appears from the record that about December, 1937, appellant met the complainant, Miss Vesta A. Olmstead, a retired schoolteacher 78 years of age. Appellant came to see her about an oil proposition, but she rejected the same. Shortly thereafter appellant called at Miss Olmstead's home to see her about an oil lease near Crow's Landing in Stanislaus County. He told her he had an oil lease there, and the complainant invested $250. From time to time thereafter she gave appellant checks for various sums of money for the purpose of buying oil leases or interests therein. It further appears that appellant never delivered to Miss Olmstead any of the leases, oil well interests or assignments of leases at any time, nor, so far as the evidence discloses, were any of such leases or assignments made of record. Various sums were also given to appellant by the complainant for an expense account and in some instances as loans. In the aggregate, the complainant delivered to appellant some $10,671, and in return therefor received only the sum of $116.67 as dividend on the invested money.

Appellant and his codefendant Stowell were old friends, having been associated as far back as 1925, and as late as August, 1940, they were mutually interested in some deals in

San Bernardino County. About August 10, 1939, appellant introduced the complainant to his codefendant Stowell. Prior to this introduction appellant had told her Mr. Stowell had offered him a proposition to go to work as a salesman, and appellant advised Miss Olmstead to put the leases she and appellant had into Stowell's project, known as Nevada Mineral Sales Company, which was owned exclusively by Stowell and operated under the aforesaid fictitious firm name, in connection with which Stowell had filed a certificate with the county clerk of Los Angeles County. Appellant was a licensed real estate salesman from October 21, 1939. The record further indicates that appellant told Miss Olmstead that he had investigated the Nevada Mineral Sales Company and found that the Real Estate Commissioner had given the company a permit to sell quarter acres of land and give away some stones with it for $2.97 each, the stones being turquoise gems. Appellant advised Miss Olmstead that Stowell needed more money for radio advertising, and asked her to put up $1,500. This occurred prior to the time of her meeting with Stowell. It was in connection with this deal that she went to the bank, where she met Mr. Stowell and gave him a check for the last mentioned amount, appellant being with her at that time. At the time of the delivery of the check in question the complainant received a memorandum agreement signed "Nevada Mineral Sales Company, by C. R. Stowell", said agreement being for a one-third interest in the Nevada Mineral Sales Company. It was also agreed that appellant would deliver to Mr. Stowell all of the leases belonging to complainant at an appraised value of $4,500. Upon payment of the $1,500, a bank account was opened in the name of the Nevada Mineral Sales Company and checks authorized to be drawn by codefendant Stowell and appellant McWhorter or either of them. This occurred about August 10, 1939. Subsequently, in September, after frequent conversations between appellant and Miss Olmstead, the latter paid appellant $1,200, which was to be used for radio advertising in connection with the company's business. This time appellant gave Miss Olmstead another memorandum agreement in the aforementioned company entitling her to a five per cent interest in the Nevada Mineral Sales Company in consideration of the payment of the $1,200. On the 25th of September appellant brought the complainant a check for $116.67 as her first dividend in the Nevada Mineral

Sales Company. Shortly after the beginning of the year 1940 the Nevada Mineral Sales Company ceased to exist.

Appellant admitted having the transactions in question with Miss Olmstead, but denied any wrongdoing, and contended that he acquired for her the interests in the Nevada Mineral Sales Company on the same basis as he had acquired the oil leases and assignments; that he acted in good faith and that he was to receive a portion of whatever profits were derived from such investments. Appellant also testified directly and positively that he did not at any time know whether there had been any permit issued to Nevada Mineral Sales Company or to Mr. Stowell authorizing the sale and issuance of certificates of interest in that concern. Appellant concedes that the certificates issued were ''securities'' within the meaning of the Corporate Securities Act and that no permit authorizing the securities to be sold or issued was obtained by either appellant, his codefendant Stowell, or any other person.

■ Appellant urges a reversal of the judgment on the single ground that the evidence is insufficient to support the conviction because of the absence of proof that he had knowledge that his codefendant, the actual seller of the securities, did not possess a permit from the Commissioner of Corporations authorizing such issuance and sale.

So far as here applicable, section 18 of the Corporate Securities Act, upon which the conviction on both counts was predicated, reads as follows: ''Every officer, agent, or employee of any company, and every other person, who *knowingly* authorizes, directs, or aids in the issue or sale of, or issues or executes, or sells, or causes or assists in causing to be issued, executed, or sold, any security * * * contrary to the provisions of this act * * * is guilty of a public offense * * * .''

No doubt appears that appellant aided his codefendant in the sale of the securities. The former admitted he investigated the business of his codefendant and introduced the latter to the complainant. That appellant was acting in concert with his codefendant, and not as the agent or representative of the complaining witness, is further evidenced by the fact that the cash proceeds of the sale were deposited in an account to which he had access and upon which he could draw. True, the only direct and positive evidence as to actual knowledge

on the part of appellant concerning the absence of a permit from the Commissioner of Corporations was that of appellant himself, who testified that he did not know that his codefendant was without such permit. But this does not excuse him for committing the acts charged against him, which in plain and positive language are denounced and forbidden by the statute. In the light of appellant's long experience as a real estate and securities salesman, the court was not bound to believe that he proceeded with the sales of the securities here in question without informing himself whether the law regulating such sales had been complied with; and the burden rested upon appellant to ascertain at his peril whether his acts were in violation of the statute. Such a rule is necessary for the effective protection of the public. (*People* v. *McCalla*, 63 Cal. App. 783 [220 Pac. 436].) Strikingly appropriate to the situation with which we are here confronted is the following language taken from *People* v. *Dean*, 131 Cal. App. 228 [21 Pac. (2d) 126]:

''The law, however, puts the burden of such investigation on the party selling, and it is no excuse if he fails to ascertain if such security cannot in fact be legally sold. He is bound to make such investigation, if the security is not issued by him, before attempting to make a sale thereof, and we may well presume that he did so, as it would not seem reasonable to presume that, knowing the law as he must, he would go ahead with the sale without an independent investigation. * * *. Otherwise, by going blindly ahead when trouble arises he forces the state to prove a negative which it is *his duty* to affirmatively ascertain before he can lawfully sell the security. The state in its prosecutions under the act is not putting the wronged victim back in the position he was before the unlawful sale was made. That wrong is still not righted, even after a successful prosecution, and we are not willing to hold that the party whose duty it was to save all that loss and damage can, by closing his eyes to facts it was his duty to ascertain before damaging some innocent third person, force the prosecuting officer to do something he should himself have done and to prove something he is bound to know under the law, if he acts legally.''

And in *People* v. *Stewart*, 115 Cal. App. 681 [2 Pac. (2d) 195], it is declared that the very object and purpose of the statute would be frustrated unless it be presumed that a de-

fendant knows that a permit must be obtained from the Commissioner of Corporations before certain securities may be sold.

The case of *People* v. *Flumerfelt*, 35 Cal. App. (2d) 495 [96 Pac. (2d) 190], relied upon by appellant, is easily distinguishable from the case at bar. In the cited case it was held that the defendant was entitled to show, as she offered at the trial to prove, that in selling the stock there in question she acted upon information imparted to her by her attorney that a permit had in fact been issued. On appeal the court stated that if she acted in good faith upon such misrepresentation of the facts, she was entitled to present such testimony to the jury in support of her claim that she did not knowingly sell the stock in violation of the act. In the case with which we are here concerned there is nothing to show that appellant relied upon any information that a permit had been issued to anybody authorizing the sale of the securities in question or that, relying upon any such misinformation, he acted in good faith in making the sales with which he was charged. On the contrary, the evidence clearly shows that without seeking information as to the existence of a permit from the Commissioner of Corporations, appellant, knowing the law as he must, nevertheless went ahead with the sales without making, as he was required to do, any independent inquiry or investigation.

The attempted appeal from the order denying the motion for a new trial is dismissed. The judgment is affirmed.

York, P. J., and Doran, J., concurred.