[Crim. No. 1515.    Fourth Dist.    Sept. 25, 1959.]

THE PEOPLE, Respondent, v. W. H. ACRES et al., Appellants.

Alan T. Selznick, Shaw & Barnett and Irving Davidson for Appellants.

Stanley Mosk, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

MUSSELL, J.—W. H. Acres, William H. Shaw, and his wife, Edith, were charged with violating sections 25500 and 26104, subdivision (a) of the Corporations Code in that they unlawfully sold shares of stock in the Sunshine Construction Industries, Inc., to W. G. Sellers and George Hadjes without first having obtained a permit so to do from the Corporation

Commissioner of the State of California. In a second count of the information W. H. Acres and William H. Shaw were charged with violating Penal Code, section 487 (grand theft) in that they unlawfully took the property of Warren Sellers and George Hadjes, consisting of more than Two Hundred Dollars. It was further alleged in the information that both offenses occurred on or about October 28, 1957. A jury trial resulted in a verdict finding the defendants named in count one guilty as charged in said count and finding the defendants named in count two not guilty. Probation was denied as to defendant Shaw and he was committed to the custody of the sheriff for a period of one year. Probation was granted as to defendants Acres and Edith Shaw under certain conditions. Defendants appeal from the judgment.

The material facts, viewed in the light most favorable to the People (*People* v. *Mazza*, 135 Cal.App.2d 587, 589 [287 P.2d 798]), are as follows:

Sunshine Construction Industries, Inc., was, at all times here involved, a California corporation. It was organized September 16, 1957. W. H. Acres, William A. Shaw and a Mr. Levy were directors. The articles of incorporation provided that the total number of shares which the corporation should have authority to issue was 25,000 and the par value of each share was $1.00. Acres was president at all times and in the latter part of September, 1957, Shaw resigned as director and his wife, Edith, was put on the board of directors in his place and was elected vice-president of the corporation. Shaw owned the property in Calamesa where the corporation had its headquarters and while he testified that as of October 28, 1957, he was a salesman for the corporation, he further testified that it was his business to get the houses built to "keep everybody going"; that he negotiated contracts and loans for the corporation and that he saw that the money came into the corporation from various contracts with respect to houses. It is conceded that no permit was ever obtained by the Sunshine Construction Industries corporation or its officers to issue stock to the incorporators or to sell shares of stock therein.

W. G. Sellers, who lived in Hemet, California, was in the business of building and carpentering, and was acquainted with Mr. Hodges (inadvertently misspelled in the information as "Hadjes"), who was in the business of contracting for building. Sellers worked for Hodges and they constructed

several houses in Hemet. Sellers was acquainted with appellants and on or about October 1, 1957, Acres and Shaw visited Sellers and Hodges in Hemet. Acres stated to them that they had a corporation and would like to see Sellers and Hodges come in with them. However, Sellers and Hodges were not interested at that time. Later, Acres took them to several places on the desert for the purpose of seeing the corporation's projects, where the corporation was going to build houses on property owned by private individuals.

Sellers testified that Shaw stated that "he had a setup there at the corporation—25,000 shares to sell of stock" and that he and Acres wanted Sellers and Hodges to put $5,000 each into the corporation. For the $5,000 Sellers was to receive 5,000 shares of stock. That on October 28, 1957, a meeting was held at the corporation's warehouse in Calamesa, at which Sellers, Hodges and the appellants were present; that Sellers and Hodges were to give appellants some money at this meeting and get receipts for stock; that Sellers and Hodges each had $1,250 cash with them, which they turned over to the appellants; that Sellers handed his cash to Shaw and all three of the appellants counted the money; that on paying over the money, he, Sellers, signed a document as a receipt for the shares of stock; that the document he signed is as follows:

"Sunshine Construction Industries, incorporated, 941 Calamesa Boulevard, Calamesa, California. To whom it may concern: This agreement, entered into this 28th day of October, 1957. W. G. Sellers agrees to buy one share of stock for the sum of $5,000 to be paid for as follows: $1250 to be paid in cash this day and a note for the amount of $3750 due January 1st in 1958, with an option of renewal. George Hodges agrees to buy one share of stock for the sum of $5,000 to be paid as follows: $1250 to be paid in cash this day and a note for the amount of $3750 due January 1st, 1958, with option of renewal. This stock release was voted at a Board meeting held this 28th day of October, 1957, at 3:00 P. M."

Sellers further testified that this document was signed by Sellers and Hodges, by appellant Acres, as president, and by appellant Edith Shaw, as vice-president; that appellant Edith Shaw typed the document and it bears her notarial seal. (The record shows that this document was introduced in evidence at the trial as People's Exhibit 1.) Sellers also testified that he did not receive any stock in the corporation and understood that the stock would be delivered to him after he paid

the balance of $3,750; that he and Hodges turned over to appellants stucco wire, wedges and other items as part payment; that appellants Acres and Shaw both told Sellers and Hodges that they (appellants) had 25,000 shares of stock in the company to sell and that they were each going to reserve 5,000 shares.

Hodges testified that on October 28, 1957, he met the three appellants at Calamesa; that they wanted him to be a part of the Sunshine Industries, Inc.; that to become a part of the corporation he and Sellers were each required to contribute $5,000 in cash and services; that he was to receive some shares of stock; that he conferred with Acres and Shaw respecting the shares of stock and prior to October 28, 1957, took trips in the desert with them in the Palm Springs area to see prospective customers who might want houses built; that on October 28, 1957, he signed the document (People's Exhibit 1) at Calamesa and handed $1,250 cash to Acres, who then gave the money to Shaw, who, in turn, gave it to the appellant Edith Shaw to deposit; that it was his understanding that the shares of stock were a dollar a share and that when the full amount was paid, he would receive 5,000 shares; that it was his understanding that he was to pay the remaining $3,750 as of January 1, 1958, or at least execute a note for that amount with an option to renew it for a longer period of time.

Appellants first contend that there is insufficient evidence to support the conviction of appellant Shaw. ▪ The rule on appeal is that this court will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. ▪ For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial court, can be set aside on the ground of insufficiency of the evidence, it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. ▪ We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict. (*People* v. *Osslo,* 50 Cal.2d 75, 84-85 [323 P.2d 397].)

Corporations Code, section 26104, subdivision (a), makes it an offense for every officer, agent or employee of a company and every other person to knowingly authorize, direct or aid in the sale of any security in nonconformity with a permit of the Commissioner of Corporations, or sell or cause or assist in causing the sale thereof. Section 25500 provides that no company shall sell any security of its own issue (with an exception not here applicable) without a permit from the commissioner authorizing it to do so, nor offer for sale, negotiate for the sale of or take subscriptions for any such security. A security includes any stock, and a sale includes every disposition or attempt to dispose of a security or interest in a security for value; a sale may be done directly or by an agent and includes an offer to sell, an attempt to sell, a solicitation of a sale and a contract of sale. (Corp. Code, §§ 25008 and 25009.)

While appellant Shaw testified that on October 28, 1957, he was a salesman for the corporation, he further testified that it was his business to get the houses built, to "keep everybody going"; that he negotiated contracts and loans for the corporation and saw that the money came into the corporation from the various contracts with respect to houses. He also testified that he was the owner of the property where the corporation had its headquarters. When appellant was questioned as to whether orders were given by him or by Acres, he stated that "nobody particularly was giving orders." The evidence shows that Shaw participated in the sale of the stock to Sellers and Hodges and is amply sufficient to support his conviction of the charges set forth in the information, as well as that of the other appellants.

It is claimed that the evidence is insufficient to support the conviction of Edith Shaw because she stated that she had no knowledge of the transaction other than to sign the agreement (People's Exhibit 1) and did not participate in the negotiations. This contention is without merit. The burden was upon appellant Edith Shaw to ascertain at her peril whether her acts were in violation of the statute and it was no excuse that she failed to ascertain whether the stock involved could be legally sold. (*People* v. *Stowell,* 45 Cal.App.2d 580, 584 [114 P.2d 614].) The record shows that appellant Edith Shaw was an officer and director of the corporation; that she was present when the transaction involved was discussed and consummated; that she typed the document (People's Exhibit 1), read it over for errors, and signed it as the vice-president

and notary and that she handled the money paid by Sellers and Hodges.

Appellants argue that the court erred in admitting the testimony of witness George Hodges taken at the preliminary examination. They claim that there was an insufficient showing of due diligence to find Mr. Hodges within the state to warrant the reception of said testimony under Penal Code, section 686, and that the record indicates that the district attorney allowed Mr. Hodges to leave the state. The record shows that during the trial the deputy district attorney made the following statement:

"Your Honor, let the record show that this case was called for trial on July 7, 1958, Department 2. At that time all the State's witnesses were present and ready to appear. A continuance was granted to the defense on July 30, 1958. At that time the case was continued. At that time—I mean on July 30th—because of the illness of the defense counsel here. At that time all the State's witnesses were present and ordered by the Court to appear here on Monday of this week. At that time Mr. George Hodges, witness for the State, informed me that he had to be in New York the following morning and that he had reservations, and I took it up with Judge Waite, and he said that he had to leave that evening and he wanted to know if his testimony would be finished. We informed him at that time that there would be no trial that day because of the continuance, and he was instructed to be here Monday. Now, he did have plane reservations going, but I don't know whether he had any coming back, and I understand he is en route and he isn't here today. I don't want to delay this trial any longer. In view of the fact that this witness testified at the preliminary examination held in the Municipal Court on March 18, 1958, in view of that fact that the defense counsel had an opportunity to cross examine, we request at this time that the prosecution be permitted to read into evidence the transcript of the preliminary examination of the witness, George Hodges, under 686 of the Penal Code. Also, if Mr. Hodges arrives here before this trial is terminated, we will certainly give the defense counsel an opportunity to place him on the stand for further cross examination and also possibly for some re-direct examination, in view of the testimony that has occurred in this case up to the present time."

Following this statement, counsel for appellants stated that he would not oppose the motion, with the exception that he reserved the right to make a motion to strike certain testi-

mony. The court granted him permission to make this motion. However, no such motion was made on behalf of the appellants. ■ The ruling of the trial court in such matter is largely discretionary and will not be disturbed unless an abuse of discretion appears. (*People* v. *Cavazos,* 25 Cal.2d 198, 200-201 [153 P.2d 177].) ■ In *People* v. *Carswell,* 51 Cal.2d 602, 605 [335 P.2d 99], the court held that the statute (Pen. Code, § 686, subd. 3) permits the introduction of such testimony where it is shown either that the witness is out of the state or that he cannot, with due diligence, be found within the state; that in the latter situation, due diligence to find the witness is required; that where the evidence is sufficient to show that the witness is absent from the state, the due diligence requirement is inapplicable, and that to hold that there must also be a showing of due diligence to keep the witness within the state, would be contrary to the plain terms of section 686 and would work an unreasonable hardship on the party seeking to introduce such testimony. We find no abuse of discretion in the admission of the questioned testimony under the circumstances disclosed by the record.

■ Appellants claim that the Corporate Securities Law has no application in the present factual situation. Citing *People* v. *Jaques,* 137 Cal.App.2d 823 [291 P.2d 124], for the proposition that if the enterprise is in the nature of a joint venture or if the investor is to have an active participation in its formation, or its operation is dependent for its success partly on the efforts of the particular investor, then, in any such event the Corporate Securities Law does not apply. However, in the instant case the evidence does not show that the services of Sellers and Hodges were indispensable or that their participation was to be such as to render the enterprise a joint venture. Under such circumstances, the Corporate Securities Law applies. (*People* v. *Mills,* 162 Cal.App.2d 840, 852-853 [328 P.2d 1049].)

■ Appellants further claim that there was error in the conviction of appellant under two statutes. Citing *People* v. *Twedt,* 1 Cal.2d 392 [35 P.2d 324]. We are not impressed with this argument. Appellants were charged with violating sections 25500 and 26104, subdivision (a) of the Corporations Code. The former section generally prohibits a company from selling securities without first having obtained a permit from the Corporation Commissioner and the latter section prohibits individuals from performing the same acts. The evidence in the instant case was sufficient to support a finding

that the appellants, acting individually and as a company, purported to sell securities without first having obtained a permit. Although it is true that cooperative acts which constitute a single offense when committed by the same person, when combined, charge a single crime and only a single punishment may be inflicted as one offense (*People* v. *Twedt*, 1 Cal.2d 392, 398 [35 P.2d 324]), in the instant case the rule is not violated, as the appellants were charged in a single count with violating the two said sections of the Corporations Code and no more than a single punishment was imposed under said count.

▆▆▆ Finally, appellants contend that the court erred in refusing an offer of proof. The record shows in this connection that the defense made an offer to prove by appellant Acres that subsequent to the filing of the complaint Sellers had stated to him that all he was interested in was the return of his money and that he would drop the criminal proceedings if he could get his money back. In denying the offer, the court stated that the matter did not go to the guilt or innocence of the parties and that the question of restitution was not of concern in the case at bar. The record indicates that the offer of proof was made relative to the theft charges set forth in the second count of the information, on which count the appellants were found not guilty. No reversible error results from the questioned ruling under the circumstances shown.

Judgment affirmed.

Griffin, P. J., concurred.

The petition of appellant William H. Shaw for a rehearing was denied October 9, 1959, and his petition for a hearing by the Supreme Court was denied November 18, 1959.