[Civ. No. 25599.  Second Dist., Div. One.  Aug. 29, 1962.]

ROBERT E. TOWNE, Plaintiff and Appellant, v. EDGAR J. FRIEDRICH, Defendant and Respondent.

Minsky, Garber & Rudof and B. W. Minsky for Plaintiff and Appellant.

Erb, Picone & Calaway, Samuel B. Picone and John R. McCann for Defendant and Respondent.

WOOD, P. J.—This is an action to recover the amount paid for the purchase of stock of a nonexistent corporation. The complaint contained seven causes of action: (1) rescission, or damages, on the ground of fraud, (2) violation of the Corporate Securities Law, (3) breach of contract, (4) money had and received; and three causes of action on promissory notes. In a nonjury trial, judgment was for defendant. Plaintiff appeals from the judgment.

Appellant contends that the findings are not supported by the evidence.

About June 7, 1958, plaintiff was introduced to defendant in Burbank, California, by the president of a savings and loan association there. Shortly after the introduction, defendant stated to plaintiff, in Burbank, that: a friend, whom he had known for many years, owned controlling interest in a corporation which was located in the eastern part of the United States; the corporation had developed a defense weapon which would make war against the United States impossible; it had a contract with the United States government, which contract was the largest ever made by the government; it had built factories throughout the entire country to manufacture the weapon; the friend owned stock of the corporation, and he had

offered to sell a portion of that stock to him (defendant); if plaintiff desired to purchase some of that stock, he (defendant) could get it from his friend; the stock would be transferred and delivered to plaintiff as soon as an announcement was made that the United States had developed the weapon, which announcement would be made no later than nine months after June 7, 1958. Defendant did not tell plaintiff the name of the corporation or of the friend. Thereafter, plaintiff gave checks, in the total amount of $12,500, to defendant in Burbank, which sum was given to defendant to be given by him to his friend for stock in the corporation. The dates and amounts of the checks were as follows: June 7, 1958—$5,000; June 19, 1958—$5,000; July 7, 1958—$2,500. On each occasion when plaintiff gave the check to defendant, defendant gave a promissory note to plaintiff for the amount of the check. Each note was signed by defendant, was payable to plaintiff, and was due nine months after the date thereof. The word "Investment" was written on each note.

The statements that defendant's friend owned controlling interest in a corporation, and that the corporation had developed a defense weapon, and had factories, as referred to above, were untrue. There was no such corporation or defense weapon, or factories, or stock.

About December 31, 1958, plaintiff discovered that the statements referred to above were untrue, and he sent to defendant a notice of rescission of the contract and the notes, and he offered therein to deliver the notes to defendant upon condition that defendant restore to him the money which he had given to defendant. Defendant did not repay any of the amount which he had received from plaintiff, and on April 13, 1959, plaintiff commenced this action.

Defendant testified as follows: The "supposed friend" to whom he referred in his conversation with plaintiff was Mr. Jaquith. He had known Jaquith's wife since 1932, and he had met him in 1952, at which time he (Jaquith) was living at the Uplifter's Club. Shortly thereafter Jaquith moved to Rancho Santa Fe, where he had a large house. Later he moved to Malibu, where he had a very fine house. He was an active church member, and was the grandson of a minister. In February 1958, Jaquith had made the statements to him, with respect to the corporation, weapon, contract, and stock, which he made to plaintiff in June 1958. He believed Jaquith "implicitly." He gave $186,100 to Jaquith in connection with "this transaction," which sum represented $10,000 which he

borrowed, money which he had received from relatives and friends "for this transaction," and the $12,500 which he received from plaintiff. Whenever he turned over any money to Jaquith, he received a note from him for the total amount which he had turned over to him to that date. On each such occasion, after the first, Jaquith tore up the old note, and executed a new note for the new total amount. All the notes were dated February 18, 1958, which was the date of the first note. On each occasion when he gave the money to Jaquith, he also gave him a list of the names of the persons "who wanted to have the stock transferred to them." He revised the list whenever he gave any money to him. The last time he gave any money to him was on July 11, 1958. On that date, Jaquith gave a note for $186,100 to him, which note was dated February 18, 1958. He never considered the note "as a note"; it was a receipt. He told plaintiff in his first conversation with him that he had a note from his friend, and that he (defendant) would give a note to plaintiff as a receipt. Jaquith did not tell him that he would give any stock to him for "raising all this money," or "indicate" that he was going to give him "anything of value of any kind [or] description." Jaquith told him to give to "everybody" notes, without interest, and that he was "putting the money through" various other corporations.

On October 8, 1958, Jaquith was charged with grand theft of the money which he had received from defendant, including the money which plaintiff had given to defendant.

On September 10, 1959, defendant herein commenced an action against Jaquith on the $186,100 note referred to above.

Jaquith died on October 24, 1959. Defendant filed a petition for special letters of administration of Jaquith's estate, in which petition he stated that he was a creditor, and that he held a promissory note executed by Jaquith in the amount of $186,100.

With respect to the first cause of action (rescission), the court found substantially as follows: It is not true that defendant made the representations with respect to the corporation, weapon, contract, or stock with intent to deceive and defraud plaintiff, or to induce him to purchase any shares of stock; and it is not true that those representations were known by defendant to be false. It is not true that any representations made by defendant were made under circumstances not warranted by defendant's knowledge, and it is not true that any statements made by defendant to plaintiff were known to

be false. It is true that plaintiff delivered to defendant: the sum of $5,000 about June 7, 1958; the sum of $5,000 on June 19, 1958; and the sum of $2,500 about July 7, 1958; and it is true that said sums were delivered by defendant to Jaquith. It is not true that it was orally agreed by plaintiff and defendant that the delivery of the stock would cancel the notes, and that in the event the stock was not delivered within nine months from the dates of the notes, the money would be returned. It is true that plaintiff served a notice of rescission on defendant.

With respect to the second cause of action (violation of the Corporate Securities Law) the court found substantially as follows: Plaintiff delivered to defendant the sum of $12,500, which sum was delivered by defendant to Jaquith for shares of stock to be delivered to plaintiff; although no permit was issued by the Commissioner of Corporations of the State of California, none was required, and the transaction was not in violation of the Corporate Securities Law.

With respect to the third cause of action (breach of an oral agreement to deliver the stock) the court found substantially as follows: There was no oral agreement whereby defendant agreed to deliver to plaintiff, within nine months from June 7, 1958, and July 7, 1958, shares of stock of a corporation which had contracts from the United States government for a defense weapon. The documents referred to as Exhibits "B," "C," and "D" (the notes) "were not, in fact," promissory notes but were only receipts acknowledging the delivery of the sums specified therein by plaintiff to defendant, which sums, in turn, were delivered by defendant to Jaquith. It is not true that defendant agreed that in the event the stock was not delivered within said nine-month period, the money would be returned to plaintiff. It is true that plaintiff delivered to defendant $12,500, which sum, in turn, was delivered by defendant to Jaquith; and it is not true that plaintiff performed all the terms and conditions of "said agreement" in that plaintiff paid to defendant said sum of $12,500 on the "said dates." It is true that defendant has not returned said sum of $12,500 to plaintiff, and that no shares of stock were delivered to plaintiff by Jaquith. It is not true that defendant has not performed the agreement in that he has failed to deliver the stock; and it is not true that, by reason of breach of contract, plaintiff has sustained damages in the amount of $12,500.

With respect to the fourth cause of action (money had and received), the court found, in effect, that defendant was not indebted to plaintiff for money had and received.

With respect to the fifth, sixth, and seventh causes of action (on promissory notes), the court found substantially, as follows: Each "document" was not "in fact, a promissory note inasmuch as there was no consideration therefor running from plaintiff to defendant; that the said document is, in fact, merely a receipt from defendant to plaintiff, acknowledging delivery to defendant of sums specified therein. . . ." It is not true that defendant promised to pay to plaintiff the respective sums nine months after the date of each "document."

Appellant (plaintiff) contends that the evidence does not support the findings as to any of the causes of action. He asserts that the evidence is clear that defendant was aiding and assisting in the sale of securities; he accepted money for the purchase of securities; no permit had been issued by the California Commissioner of Corporations authorizing the sale of the securities; and no license had been issued by the commissioner authorizing defendant to sell securities. Appellant argues that such activities by defendant constituted a violation of the Corporate Securities Law, and he (plaintiff) was entitled to recover the amount which he had paid to defendant under any of the causes of action set forth in his complaint (rescission, for fraud; violation of the Corporate Securities Law; breach of contract; money had and received; promissory notes).

Sections 25000 through 26104 of the Corporations Code constitute the Corporate Securities Law. Section 25500 of that code provides, in part: "No company shall sell any security of its own issue, except upon a sale for a delinquent assessment . . ., or offer for sale, negotiate for the sale of, or take subscriptions for any such security, until it has . . . secured from the commissioner a permit authorizing it so to do." Section 25008 provides, in part: " 'Security' includes all of the following: (a) Any stock. . . ." Section 26104 provides, in part: "Every officer . . . of any company and every other person, who does any of the following acts is guilty of a public offense . . .: (a) Knowingly authorizes, direct, or aids in the issue or sale of . . . or sells, or causes or assists in causing to be . . . sold, any security, in nonconformity with a permit of the commissioner then in effect authorizing such issue, or contrary to the provisions of this division [Corporate Securities Law]." ▪ In *People* v. *Syde,* 37 Cal.2d 765,

768 [235 P.2d 601], it was said: "The Corporate Securities Law does not contain an all-inclusive formula by which to test the facts in every case. . . . [T]he general purpose of the law is to protect the public against the imposition of unsubstantial, unlawful and fraudulent stock and investment schemes and the securities based thereon." ▮ In *People* v. *Oliver,* 102 Cal.App. 29, 36 [282 P. 813], it was held that the fact that a corporation had not been formed was no defense to an accusation of violating the Corporate Securities Law (by agreeing to sell stock and accepting payment therefor). (See also *People* v. *Jaques,* 137 Cal.App.2d 823, 831, 832, 833 [291 P.2d 124].) ▮ In *People* v. *Mason,* 86 Cal. App.2d 445, 455 [195 P.2d 60], it was said: "It is the duty of every prospective vendor of securities first to ascertain whether a permit has been issued for such sale by the sovereign power." ▮▮ In *Taormina* v. *Antelope Mining Corp.,* 110 Cal.App.2d 314, 319, 320 [242 P.2d 665], it was said: "While it has long been settled that the purchaser of securities issued in violation of the Corporate Securities Law may recover in an action for money had and received on the theory that the sale and the securities are void [citations], it is also the law that a person who sells a security impliedly represents that a permit therefor has been secured when one is required by law for such a sale, and if this implied representation is false, then it is a negligent misrepresentation which is an actionable fraud [citation] ; and where, as here, the action is for damages for fraud, recovery may be had against all persons participating in the fraud, whether they received a portion of the money paid or not [citation]." (See also *Gormly* v. *Dickinson,* 178 Cal.App.2d 92, 102, 103 [2 Cal. Rptr. 650].)

Respondent (defendant) argues that the transaction involved "did not come within the purview" of the Corporate Securities Law for the reason that the evidence is uncontradicted that the stock which plaintiff was seeking to purchase was stock "owned personally" by Jaquith, and it was not stock to be issued by the corporation; and that the Corporate Securities Law does not apply to stock which is owned personally.

▮ Defendant represented to plaintiff that corporate stock was available for sale by his "friend," and that he could get some of the stock for plaintiff from that person. He did not disclose the name of the corporation or the name of his friend. Plaintiff paid $12,500 to defendant for the purpose

of purchasing such stock, and many other persons paid a total of $163,600 to defendant for the same purpose. There was no corporation, or stock, and, of course, there was no permit authorizing the issuance of stock. Under the circumstances herein, insofar as plaintiff was concerned, there was an implied representation by defendant that a permit had been issued authorizing the issuance of stock. Such representation was a negligent misrepresentation and constituted actionable fraud. Jaquith was selling corporate securities (stock) in California. As stated, there was no corporation, or stock, or permit to issue the stock. There was no stock which was owned by Jaquith. Defendant aided and assisted Jaquith in selling the alleged stock of the purported corporation. There was no evidence that defendant knew that a permit was necessary in order to sell stock of the purported corporation, or evidence that he knew that a permit had not been obtained. It was, however, his duty to ascertain whether it was necessary to obtain a permit, or to ascertain whether a permit had been issued. (*People* v. *Mason,* 86 Cal.App.2d 445, 455 [195 P.2d 60]; *People* v. *Stowell,* 45 Cal.App.2d 580, 584 [114 P.2d 614].) The transaction with this plaintiff was part of an unsubstantial, unlawful, and fraudulent scheme of Jaquith. Defendant participated in that scheme without making an investigation for the purpose of ascertaining whether a permit was necessary or whether a permit had been issued. As stated in *People* v. *Syde, supra,* the general purpose of the Corporate Securities Law is to protect the public against the imposition of such schemes. Defendant's transaction with plaintiff was in violation of the Corporation Securities Law. Plaintiff was entitled to recover the money paid to defendant.

In view of the above conclusions, it is not necessary to determine other contentions.

The judgment is reversed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied September 24, 1962, and respondent's petition for a hearing by the Supreme Court was denied October 24, 1962.