[Crim. No. 21538. Second Dist., Div. Three. Jan. 23, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID WALKER TAYLOR, Defendant and Appellant.

120

COUNSEL

Mirecki & Rhodes and George H. Rhodes for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Robert F. Katz and William V. Ballough, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ALLPORT, J.**—After a trial by jury defendant was convicted of six counts of violation of section 25540 of the Corporations Code and eight counts of violation of section 487, subdivision 1, of the Penal Code (grand theft). He appeals from the judgment of conviction.

The gravamen of the Corporations Code violations is that between April 16, 1969, and June 23, 1969, defendant caused to be issued and sold securities, to wit, certificates of interest and participation in the Sultan oil lease in Oklahoma, without first having applied for and secured a qualification of such security and transaction from the Commissioner of Corporations of the State of California pursuant to Corporations Code section 25110. The gravamen of the theft charges is that defendant knowingly and designedly, by false and fraudulent representation, defrauded those purchasing the securities of additional sums in excess of $200 each. (Pen. Code, § 487, subd. 1.)

■ It is contended on appeal that the evidence is insufficient to support the convictions of grand theft and of violations of the Corporations Code in that there is no showing that defendant personally defrauded the investors or that he received any personal benefit from the transaction since all of the money obtained was used to pay obligations of the venture incurred by the corporate entity through which the enterprise was being conducted, the Newport Oil and Gas Co. With respect to the grand theft charges defendant suggests that we establish a new interpretation of "fraud by false pretenses" by requiring that the accused stand to benefit personally by his act before guilt attaches. ■ The applicable law is stated in *People* v. *Ashley,* 42 Cal.2d 246 [267 P.2d 271] (cert. den. 348 U.S. 900 [99 L.Ed. 707, 75 S.Ct. 222]) at page 259 as follows: "To support a conviction of theft for obtaining property by false pretenses, it must be shown that the defendant made a false pretense or representation with intent to defraud the owner of his property, and that the owner was in fact defrauded. It is unnecessary to prove that the defendant benefited personally from the fraudulent acquisition. (*People* v. *Jones,* 36 Cal.2d 373, 377, 381 [224 P.2d 353].) The false pretense or representation must have materially influenced the owner to part with his property, but the false pretense need not be the sole inducing cause. (*People* v. *Chamberlain,* 96 Cal.App.2d 178, 182 [214 P.2d 600] and cases there cited.)" (*People* v. *Gibson,* 275 Cal. App.2d 198, 200 [79 Cal.Rptr. 693].) ■ Intent to defraud is a question of fact. It may be, and usually must be, inferred circumstantially. (*People* v. *Hedrick,* 265 Cal.App.2d 392, 397 [71 Cal.Rptr. 352].) ■ An accused cannot escape responsibility merely because he used an innocent agent as his instrumentality in soliciting through misrepresentation. (*People* v. *Waxman,* 114 Cal.App.2d 399, 407-408 [250 P.2d 339].)

■ The record discloses that on June 18, 1969, investors were advised by memorandum that drilling on the Sultan well had commenced on that date. On July 1, 1969, a memorandum was circulated to investors to the effect that drilling was going on satisfactorily. On July 8, 1969, another

memorandum was sent to investors advising them that oil had been found on the Sultan property and on July 10, 1969, an invoice was forwarded soliciting an additional investment designated as a completion fund. On August 12, 1969, a progress report told of finding oil and gas in formations beneath the Sultan property. These representations, although made through an innocent agent, were false, known to defendant to be false and circulated to investors with his knowledge and acquiescence. As a result thereof the investors were relieved of the additional funds purportedly to be used to complete the Sultan well. In fact, nothing had been done on the property prior to September 10, 1969. Drilling on this well was not commenced until September 14, 1969. No oil or gas was discovered. On September 22, 1969, it was determined to be a dry hole and plugged. On the same day the Oklahoma Corporate Securities Commission was so advised and notice sent to defendant. Since the drilling had not commenced and no oil or gas discovered prior to the issuance of the memorandum of July 8 and the request for completion funds July 10, 1969, this additional money was obtained by means of false statements. ■ It is no defense that the criminal acts were actually performed by others or that defendant is not shown to have directly benefited personally.

With respect to the Corporations Code violations Isadore Brodsky, senior special investigator for the state Department of Corporations, testified that a search of that department's records failed to reveal any authorization for defendant or his corporate affiliate Newport Oil and Gas Co. to sell fractional interests in the Sultan well. ■ Defendant argues generally that Brodsky's testimony should be stricken from the record, apparently because the witness was not qualified as an expert on the legal effect of the Corporate Securities Law. We do not agree with this contention. Brodsky was called by the People as to whether or not the Department of Corporations' records contained an authorization for defendant or Newport to sell securities. The objectionable testimony was developed by defendant on cross-examination and further explored by the People on redirect. Under the circumstances it was not error to deny the motion to strike the testimony. (*People* v. *Moran,* 1 Cal.3d 755, 762 [83 Cal.Rptr. 411, 463 P.2d 763]; Witkin, Cal. Evidence (2d ed. 1972 Supp.) § 1286.) Joseph Noel, hired by defendant to obtain investors for Newport Oil and Gas Co., knew of no communications between the Corporations Commission (Division of Corporations) and defendant regarding the sale of security interests in California, although defendant had stated that the subject was being handled by Newport's attorney. ■ This evidence supports the inference that the security interests in the Sultan lease had never been qualified and that defendant failed to comply with the requirements of section 25110. Such a failure warrants the conviction of violation of section 25540. (*People* v.

*Acres,* 174 Cal.App.2d 42, 47 [344 P.2d 327]; *People* v. *Carr,* 156 Cal. App.2d 462 [319 P.2d 445].) There is no merit to the contention of insufficiency of the evidence to support the judgment. (See *People* v. *Reilly,* 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649].)

██ ██ Defendant also argues that the Corporations Code sections of which he stands convicted are unconstitutional in that they are vague, ambiguous and uncertain and that section 25540 on its face places the burden upon one charged with a violation thereof to prove his innocence by establishing that he had no knowledge of the rule or order of which he is charged. We are unimpressed with the latter part of the argument since defendant was not charged with nor convicted of violating any "rule or order" made under the law but rather was found guilty of violating the provisions of the law itself requiring the security interest to be qualified before being sold. (§ 25110.) We are likewise unimpressed with the argument challenging the constitutionality of the act upon the ground of its being vague, ambiguous and uncertain. Section 25540 makes it a crime to violate any of the provisions of the Corporations Code pertaining to the issuance and sale of securities. Section 25110 makes it unlawful to offer or sell a security before the sale is qualified under sections 25111, 25112, or 25113 unless the security or transaction is exempt under section 25100 et seq. The law is neither vague, ambiguous nor uncertain. (Cf. *Conrad* v. *Superior Court,* 209 Cal.App.2d 143, 150-151 [25 Cal.Rptr. 670].) ██ Since the evidence in the instant case establishes a sale (see § 25017, subd. (a)), the exemptions of sections 25102, subdivision (b) and 25104, subdivision (g), are inapplicable, even assuming a valid registration statement under the Securities Act of 1933 was in existence. The trial court properly instructed the jury that the seeking or obtaining of approval from the Securities and Exchange Commission had no bearing in the instant case on the requirement that one secure a permit from the California Commissioner of Corporations to sell securities under state law.

██ Defendant suggests the existence of a "Hearsay Problem" contending that the testimony of the alleged victims was hearsay and that *People* v. *Waxman, supra,* 114 Cal.App.2d 399, is factually distinguishable and thus not controlling of the question. Defendant does not specify the particular testimony of which complaint is made nor point out in his brief the objections made thereto at the time of trial. Under the circumstances a hearsay objection may not be raised on appeal. (Evid. Code, § 353; *People* v. *Huber,* 225 Cal.App.2d 536, 544 [37 Cal.Rptr. 512] cert. den. 380 U.S. 981 [14 L.Ed.2d 275, 85 S.Ct. 1347].) The following from *People* v. *Waxman, supra,* 114 Cal.App.2d 399, at page 407 appears appropriate: "Not only did appellant fail to set forth in his brief the events that occurred at the

times of the alleged rulings but he did not even specify the pages in the transcript where they might be found. His claim is therefore without basis and should not be considered. (*People* v. *Jenkins,* 118 Cal.App. 115, 120 [4 P.2d 799].) However, it may be pertinent to observe that such contention ignores the proof that appellant prepared all the documents used by Montrose and that the latter followed the program of appellant even to the statements to be made to the purchasers. He had no discretion in preparing the contracts of sale, could not use a letter of credit, sell for cash on delivery or have the money escrowed. He was instructed as to what he should say with reference to the source of the product offered to the publishers. When Montrose deviated from the established wording of the contract with Rodgers-McDonald Publishing Company, he promptly obtained Waxman's written 'O.K.' He followed Waxman's instructions as to his negotiations with the publishers when informed that no newsprint would be available on July 7. All the evidence indicates that Montrose was the innocent dupe of Waxman's perfidious scheme and was his pliable tool in effectuating the latter's concealed criminal device."

Finally it is contended that defendant was deprived of testifying on his own behalf because in 1952 he had been convicted of a securities violation and, if such fact were injected into the present trial, it would have insured the instant conviction. He argues that we should make the rule of *People* v. *Beagle,* 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], retroactive. The contention is without merit. The Supreme Court has determined that *Beagle* is not to be applied retroactively. (*People* v. *Beagle, supra,* 454-455, fn. 2.) The instant case was tried prior to the *Beagle* decision.

The judgment is affirmed.

Schweitzer, Acting P. J., and Cobey, J., concurred.