521 P.2d 611

**STATE of Arizona, Appellee.**

v.

**Dan Reed GOODMAN, Appellant.**

**No. 2912–PR.**

Supreme Court of Arizona,
En Banc.

April 23, 1974.

Gary K. Nelson, Atty. Gen. by Cleon M. Duke, Asst. Atty. Gen., Phoenix, for appellee.

Green & Berman, P. C. by David M. Berman and Norman E. Green, Phoenix, for appellant.

HAYS, Chief Justice.

The appellant, Dan Reed Goodman, was tried before a jury and found guilty of two felonies: sale of unregistered securities (A.R.S. § 44–1841) and sale of securities by an unregistered salesman (A.R.S. § 44–1842). He was sentenced to Arizona State Prison for a term of not less than nine nor more than ten years on each count, the terms to run concurrently. His conviction was reversed by the Court of Appeals, State v. Goodman, 21 Ariz.App. 252, 517 P.2d 1299 (1974). The appellee, State of Arizona, through the Maricopa County Attorney, petitioned this court for review. We granted the petition.

On appeal the defendant below raised two issues: (1) whether the State failed to prove all the essential elements of the crimes alleged in the information, and (2) whether the appellant's security sale was exempt from registration.

The crimes for which the appellant was found guilty arose from a single transaction which occurred on March 3, 1972. Appellant, accompanied by Charles Gary Rolf, a witness for the State in this case, went to the home of the complaining witness, Mrs. Steinel, who was a seventy-year-old piano teacher. He obtained a check from Mrs. Steinel for $1,000 payable to American Standard Insurance, in exchange for a security which Mrs. Steinel never in fact received. Appellant admits that he was not registered to sell securities nor was the security itself registered. Appellant claims that the security was exempt from registration under A.R.S. § 44–1843 (8) as a promissory note which matures within twelve months. Mrs. Steinel, who was a poor witness due to the effect of her age upon her ability to remember, testified that on March 3, 1972, two men, Mr. Rolf and Mr. Goodman, sold her a $1000 bond that paid 25% for which she made out a check to American Standard Insurance. She also testified that on the night before, a total stranger, Mr. Rolf, came to her house and sold her something costing $95. This $95 was subsequently refunded to Mrs. Steinel.

Mr. Rolf testified that he was a long-time friend and business associate of the defendant. He testified that on March 2, 1972, the day before the crime, he sold Mrs. Steinel a medicare supplement insurance policy for $95. At that time Mrs.

Steinel told Rolf that she had $5,000 that she wanted to invest. Rolf told her that his company had an investment program but that he did not know the details. It was agreed that he would return the next day with Mr. Goodman who would explain the program. The two returned the next day and after some conversation Mrs. Steinel gave them the check for $1,000. Rolf testified that he did not know exactly what Goodman sold to Mrs. Steinel but that when he asked sometime later Goodman told him it was "an agreement to borrow money from her."

The defendant Goodman testified in his own behalf. He did not call any other defense witnesses. He testified that he was vice president of Southwestern States Securities which then owned American Standard Insurance Brokerage. He stated:

"I went there (Mrs. Steinel's home) to have an interview with her in regards to an investment in the corporation that pertained to a corporate promissory note which we made available to policy holders that were interested which consists of ten per cent interest on her deposit, . . ."

Goodman was then asked whether he explained to Mrs. Steinel various plans or types of securities that he was prepared to sell her. He answered, "No, I did not. We only had one. That is a corporate promissory note."

"Q. What is a corporate promissory note?"

"A. You call it an I.O.U. from a corporation. It is a loan to a corporation. A corporation agrees to pay a specified rate of interest and the money returned within a year."

Goodman further testified that the note could be redeemed in twelve months. Later, Goodman stated, "I told her she could open up an account with a minimum of $1,000, and in the future if she wanted to invest more, she could."

There was more testimony that when Goodman attempted to deliver the promis-

sory note to Mrs. Steinel she would not accept it nor would she accept a refund of her money. The only rebuttal witness presented by the State was Mr. Hall, an investigator for the Securities Division of the Arizona Corporation Commission who testified that no corporation by the name of American Standard Insurance Brokerage, Inc., was registered in Arizona, although Southwestern States Securities was registered.

The appellant contended that one cannot sell a nonexistent security and be in violation of A.R.S. § 44–1841 and § 44–1842. At the trial the State established that the company in question had no bonds registered with the Securities Division of the Arizona Corporation Commission. The Court of Appeals disagreed with this contention and so do we. We concur with the Court of Appeals' holding as to this point —that a seller who purports to sell "nonexistent" securities and never delivers them is subject to prosecution under our state securities laws, particularly since the applicable statutes include *offers to sell* a security within the criminal prohibition. *See* Towne v. Friedrich, 207 Cal.App.2d 205, 24 Cal.Rptr. 400 (1962).

We hold that the State met its burden of proof as to the two felonies (A. R.S. § 44–1841) and sale of securities by an unregistered salesman (A.R.S. § 44–1842). The defendant did not meet his burden of proof to bring himself within the exemption of A.R.S. § 44–1843.8. *See* United States v. Tehan, 365 F.2d 191 (6th Cir. 1966).

That statute reads as follows: "The provisions of §§ 44–1841 and 44–1842 shall not apply to any of the following classes of securities:

"8. Negotiable promissory notes or commercial paper, if the issue of such notes or paper matures in not more than twelve months from date of issue and is issued within three months after the date of sale, and if such sale arises out of current transactions or the proceeds of

which have been or are to be used for current transactions."

Although the defendant testified that the instrument sold was a corporate promissory note which matured within twelve months, he presented no testimony that the sale arose out of current transactions or that proceeds thereof had been or were to be used for current transactions. That is one of the qualifications for this exemption.

Futhermore, and most importantly, when faced with conflicting testimony, the jury chose to believe the victim, Mrs. Steinel, rather than the defendant. Mrs. Steinel steadfastly maintained that she had been sold a bond. She testified that she did not remember anything about a redemption date. It was established by the evidence that the company to which Mrs. Steinel made out the $1,000 check and to whose bank account the check was deposited was not registered with the Corporation Commission. The defendant testified that the instrument sold to Mrs. Steinel was redeemable in twelve months; however, the instrument he offered as an exhibit was redeemable in eleven months. Obviously the defendant's testimony was contradictory. On one hand he talked about a corporate promissory note; on the other, he frequently referred to an "investment program" with the company. He also called the investment a "deposit" and an open account with a minimum of $1,000 in which Mrs. Steinel could "invest" more. The jury found Mrs. Steinel to be a more credible witness than the defendant and we will not overturn that finding. This court is not deciding whether it would have reached the same decision but whether there was competent evidence to support the conclusion of the jury. State v. Jacobs and Lollis, 110 Ariz. 151, 515 P.2d 1171 (1973). Therefore, the judgment is affirmed.

 The defendant did not raise the issue of excessive sentence. Because this was a crime entirely without violence and since there is evidence that a refund of the victim's money was proffered, we feel the nine- to ten-year sentence may have been harsh under these particular circumstances.

The presentence report indicates that the defendant has one prior conviction for disturbing the peace and obstructing justice. It further indicates that he was previously charged on a securities violation, but it was dismissed. However, defendant, who is 25 years of age, has an honorable discharge from the marine corps and a good combat record.

Therefore, in accordance with the authority vested in this court by A.R.S. § 13–1717(B), the sentence is hereby reduced to a term of four to five years in the Arizona State Prison on each count; the sentences to be concurrent beginning December 8, 1972.

Conviction affirmed.

CAMERON, V. C. J., and STRUCK-MEYER, LOCKWOOD and HOLOHAN, JJ., concur.