W. David HOLLOWAY, M.D.; Lisa Holloway; Charles Woodard; Linda Woodard; Maxine Black, individually and as Trustee for James T. Black and Shellie Black; Porter–Strait Instrument Co., Inc., an Oklahoma corporation; Jeremy K. Bush; Shirley Bush; United Resources Building Company, Inc., an Oklahoma corporation; Hugh Hollowell; Marshall H. Udden; Mary F. Udden; Howard R. Cadwell; Doris G. Cadwell; William L. Akers; Norita L. Akers; Cal Acree; Betty K. Acree; Robert John Walpole; Bobbee C. Ray, individually and as Trustee for James F. Haning, II and Angela Jean Haning Revocable Trust and Victoria Nininger; Joy A. Donovan, as Trustee for James M. Donovan and John A. Donovan; R.H. Arnold; Marvelle McDaniel; Martha Hester Arnold; Claudette Howe; Fred E. Miller; Vera Miller; Beverly Joyce Miller; Ann McLoud; Joyce McClure;

Charlotte A. Broad, individually and as Trustee for Russell M. Gawf and Megan D. Gawf; John E. Broad; John W. Broad; Dewayne Broad, for themselves and as representative parties of class, Plaintiffs/Appellees/Cross–Appellants,

v.

PEAT, MARWICK, MITCHELL & CO., a partnership; Sunbelt Bank & Trust Company, formerly Republic Bank & Trust Co., a State Bank Association; Wesley R. McKinney, individually; Phillips Breckinridge, Administrator of the Estate of Glenn F. Prichard, Deceased; RBI of Oklahoma, Inc., a Delaware corporation; R.R. Bastian, III; Hal W. Oswalt; Harold J. Born; William J. Doyle, Jr.; Horace H. Porter, M.D.; William W. Ramsey; Edward B. Wilcox; Altus E. Wilder, III; G. Larry Young; Orville J. Bertalot; Ted C. Bodley; Keith E. McNeal, Edward L. Taylor; Charles G. Wray; Ansil Ludwick, Jr.; Paul W. Anderson, Jr.; G. Richard Degen; Brown J. Akin, Jr.; Robert C. Bates; Richard G. Bell; Bob C. Lamirand; Douglas W. Dixon; Rodney Miller; Dan W. Allred; Timothy J. Sullivan; Dwight A. Pilgram; Roger H. Laubach; James D. Essig; Martha J. Cravens; Wilma F. Wood; Charles Schusterman; Richard Williford; Republic Bancorporation, Inc., also known as Sunbelt Bancorporation, Inc., an Oklahoma corporation, Defendants/Appellants/Cross–Appellees.

Nos. 87–1486, 87–1490.

United States Court of Appeals, Tenth Circuit.

April 10, 1990.

Lawrence H. Eiger (Michael B. Hyman and Steven A. Kanner, of Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Chicago, Ill.; Steven E. Smith, of Steven E. Smith & Associates, Charles O. Hanson, Richard K. Holmes, and Stewart E. Field, of Hanson, Holmes, Field & Snider, of Tulsa, Okl.; and Professor Joseph C. Long, of the University of Oklahoma, College of Law, Norman, Okl., with him on the briefs), of Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Chicago, Ill., for plaintiffs/appellees/cross-appellants.

L.K. Smith (Kimberly A. Lambert, with him on the briefs), of Boone, Smith, Davis & Hurst, Tulsa, Okl., for all the defendants/appellants/cross-appellees except Peat, Marwick, Mitchell & Co.

Graydon Dean Luthey, Jr. (Deryl L. Gotcher and Roy C. Breedlove, of Jones, Givens, Gotcher, Bogan & Hilborne, P.C., Tulsa, Okl.; and Anthony J. Costantini, Associate Gen. Counsel, of Peat, Marwick, Main & Co., New York City, with him on the briefs), of Jones, Givens, Gotcher, Bogan & Hilborne, P.C., Tulsa, Okl., for defendants/appellants/cross-appellees Peat, Marwick, Mitchell & Co.

Daniel L. Goelzer, Gen. Counsel, Jacob H. Stillman, Associate Gen. Counsel, Rosalind C. Cohen, Asst. Gen. Counsel, and Batya Roth, attorney, of the S.E.C., Washington, D.C., amicus curiae.

Before McKAY, BARRETT and TACHA, Circuit Judges.

TACHA, Circuit Judge.

On March 5, 1990, the Supreme Court granted the petition for writ of certiorari in *Holloway v. Peat, Marwick, Mitchell & Co.*, 879 F.2d 772 (10th Cir.1989), vacated the judgment, and remanded the case for

further consideration in light of *Reves v. Ernst & Young*, —— U.S. ——, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990). —— U.S. ——, 110 S.Ct. 1314, 108 L.Ed.2d 490. After re-examining *Holloway*, we adhere to the judgment entered therein. The facts of this case are described in our first *Holloway* opinion and will not be repeated here. *See Holloway*, 879 F.2d at 774–75.

## I.

In *Holloway* we developed a two-part approach based on a "investment versus commercial" test for determining when a note is a security. Part one focused on whether the instrument at issue was within the statutory definition of a security, 15 U.S.C. sections 78c(a)(10) (Securities Exchange Act of 1934) and 77b(1) (Securities Act of 1933) (collectively "the Acts"). *See Holloway*, 879 F.2d at 775–83. Part two examined whether other federal regulation governing the transaction rendered the protection of federal securities laws unnecessary. *See Holloway*, 879 F.2d at 783–88. Although the *Reves* approach differs from our two-part test in *Holloway*, we find that our outcome in *Holloway* remains unchanged after *Reves*.

## A.

*Reves* expressly rejected applying the test developed for "investment contracts," *see SEC v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), to "notes." *See Reves*, 110 S.Ct. at 951. Instead, the Court adopted a two step "family resemblance" test to determine when a "note" is a "security" within the coverage of the Acts.

> [I]n determining whether an instrument denominated a "note" is a "security," courts are to apply the version of the "family resemblance" test that we have articulated here: a note is presumed to be a "security," and that presumption may be rebutted only by a showing that the note bears a strong resemblance (in terms of the four factors we have identified) to one of the enumerated categories of instrument[s that are not "securities" based on a judicially crafted list of excep-

tions]. If an instrument is not sufficiently similar to an item on the list, the decision whether another category should be added [to the list of "notes" that are not "securities"] is to be made by examining the same factors.

*Id.* at 952.

The four *Reves* factors used to rebut the note's presumed status ́as a security are: (1) an examination of the transaction to assess the motivations which would prompt a reasonable seller and buyer to enter into it; (2) the plan of distribution of the instrument; (3) the reasonable expectations of the investing public; and (4) whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering the protection of federal securities laws unnecessary. *See id.* at 951–52. We use these factors in step one of the *Reves* test to determine whether the note at issue bears a strong family resemblance to a category of "nonsecurities" on the judicially created list of exceptions. If the note does not resemble an existing category of nonsecurities, we proceed to step two of the *Reves* test and use these factors to determine whether we should create a new exception for the note at issue.

Applying *Reves* to the instruments in this case, we presume that the instruments are securities. Under *Reves* step one, we find that the instruments at issue do not resemble any category on the judicially recognized list of nonsecurities. *See Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 939 (2nd Cir.1984); *Exchange Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1138 (2nd Cir.1976). *Reves* step two dictates that we next examine the instruments in light of the four guideline factors to decide whether these instruments should be added to the judicial list of nonsecurities.

We essentially performed the *Reves* analysis of whether a new category of nonsecurities should be created for these instruments in our original *Holloway* opinion. *See Holloway*, 879 F.2d at 775–88. In *Holloway* we relied on eight factors cited

favorably in *Zabriskie v. Lewis,* 507 F.2d 546, 551 n. 9 (10th Cir.1974), as indicia of a security. *Reves*'s four-factor approach supercedes our *Zabriskie* eight factor analysis. However, most, though not all, of the facts we analyzed under the *Zabriskie* factors are incorporated into the *Reves* factors.[1] Thus, our ultimate decision in *Holloway* remains unchanged under *Reves.*

### B.

▮ *Reves* did not address whether federal courts may consider state regulation of a note when evaluating whether the presumption that the note is a "security" has been rebutted. However, in applying the fourth *Reves* factor the Supreme Court's emphasis clearly was on federal regulation:

> Finally, we find no risk-reducing factor to suggest that these instruments are not in fact securities. The notes are uncollateralized and uninsured. Moreover, unlike the certificates of deposit in *Marine Bank* [*v. Weaver,* 455 U.S. 551, 102 S.Ct. 1220, 71 L.Ed.2d 409 (1982)], which were insured by the Federal Deposit Insurance Corporation and subject to substantial regulation under the federal banking laws, and unlike the pension plan in *Teamsters v. Daniel* [439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979)], which was comprehensively regulated under the Employee Retirement Income Security Act of 1974, *the notes here would escape federal regulation entirely if the Acts were held not to apply.*

*Reves,* 110 S.Ct. at 953 (citations omitted) (emphasis added). Moreover, *Reves* rejected state law on when a demand note "matures" in favor of a federal rule designed to further the remedial purposes of the Acts. *See id.* at 954–55. By analogy, state regulation of the transaction should not be a factor governing application of the remedial federal securities laws. We therefore reaffirm our holding in *Holloway* that under the supremacy clause, U.S. Const. art. VI, cl. 2, our focus must be on *federal* regulation; state regulatory schemes cannot displace the Acts. *See Holloway,* 879 F.2d at 783–86.

### II.

▮ Even if an issuer cannot rebut the presumption that a note is a security under the family resemblance test, the note may still be excluded from the coverage of the Acts if it "has a maturity at the time of issuance of not exceeding nine months." *See* 15 U.S.C. section 78c(a)(10). *Reves* held that under federal law the "maturity"

---

1. *Zabriskie* factor one, use of proceeds to buy specific assets or services rather than general financing, is an objective indicator of *Reves* factor one, the motivations prompting a reasonable seller and buyer to enter into the transaction. *Zabriskie* factor two, risk to the initial investment, remains relevant to the extent that *Reves* factor four considers the existence of other regulatory schemes that significantly reduce the risk of the investment. The third *Zabriskie* factor, whether the note gives certain rights to the payee, is no longer applicable under the *Reves* guideline factors. *Zabriskie* factor four, repayment contingent on profit or production, is one of many circumstances we must consider under *Reves* factor one. The fifth and sixth *Zabriskie* factors, a large number of notes or payees and a large dollar amount, are incorporated in *Reves* factor two, the plan of distribution for the instrument. *Reves* overrules *Zabriskie* factor seven, which characterized demand notes as "commercial" and therefore as nonsecurities. The *Reves* court found unpersuasive the "commercial" characterization rationale that the demand nature of the note is very uncharacteristic of a security because such instant liquidity is inconsistent with the risks ordinarily associated with a security. *See Reves,* at 953. Finally, the eighth *Zabriskie* factor, the parties' characterization of the note and the transaction, a subjective perspective, may shed some light on *Reves'* objective factors one and three, the motivations of a reasonable seller and buyer and the reasonable expectations of the investing public.

The major analytical difference between *Reves* and *Holloway* lies in the treatment of other federal regulatory schemes. Our analysis in *Holloway* provided that even if the instrument otherwise qualified as a security under the "investment versus commercial" test, other federal regulation governing the transaction might still remove the instrument from the protection of the federal securities laws. *See Holloway,* 879 F.2d at 783. *Reves* alters our original *Holloway* analysis in that we now view the existence of another regulatory scheme which significantly reduces the risk of the instrument as one of four factors used to determine whether the instrument is or should be categorized as a nonsecurity. *See Reves,* 110 S.Ct. at 951–52. The change in emphasis does not affect the outcome in this case.

of a demand note falls outside of the section 78c(a)(10) exception for short-term notes. *See Reves*, 110 S.Ct. at 955. Therefore, section 78c(a)(10) does not exclude those debt instruments in *Holloway* which are payable on demand from the coverage of the Acts. As for the remaining instruments at issue which have a thirty-day notice requirement prior to redemption, we reaffirm our holdings in *Zabriskie* and *Holloway* that the section 78c(a)(10) exception for short-term notes is limited to prime quality negotiable commercial paper of a type not ordinarily purchased by the general public. *See Holloway*, 879 F.2d at 778; *Zabriskie*, 507 F.2d at 550.[2] Because none of the thirty day redemption instruments at issue in *Holloway* qualify as "prime quality negotiable paper," section 78c(a)(10) does not exclude these instruments from the federal securities laws.

### III.

We reaffirm our judgment in *Holloway*. We REVERSE the summary judgment in favor of the defendants as to the RTS instruments and REMAND to enter summary judgment in favor of the plaintiffs. We AFFIRM the grant of summary judgment for the plaintiffs as to the RFC instruments. We REVERSE the summary judgment in favor of the plaintiff as to the RBI note and REMAND for further consideration of the context of the underlying transaction consistent with *Reves* and this opinion.

---

**2.** The *Reves* court did not decide whether the 15 U.S.C. section 78c(a)(10) exception for short-term notes excludes *all* notes with a maturity date of nine months or less at the time of issuance, or only excludes "commercial paper— short-term, high quality instruments issued to fund current operations and sold only to highly sophisticated investors," *Reves,* 110 S.Ct. at 954. *See id.* at 953–55.