826 P.2d 1199

**STATE of Arizona, Appellee,**

v.

**Ronald Arthur TOBER and Garth Stevens Black, Appellants.**

**Nos. 1 CA–CR 88–1458; 1 CA–CR 88–1459.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 26, 1991.

Review Granted April 7, 1992.

**574**

Grant Woods, Atty. Gen. by Warren J. Granville, Asst. Atty. Gen., Phoenix, for appellee.

Gallagher & Kennedy, P.A. by Leslie T. Jones, Phoenix, for appellant Tober.

Jones, Skelton & Hochuli by A. Melvin McDonald, Phoenix, for appellant Black.

OPINION

JACOBSON, Presiding Judge.

Appellants Ronald Arthur Tober and Garth Stevens Black (collectively, defendants) were convicted after a jury trial of four counts of sale of unregistered securities and four counts of sale of securities by an unregistered salesman, all class 4 felonies. See A.R.S. §§ 44–1841 and 44–1842. The trial court placed defendants on probation for four years, and further ordered them to pay $73,900.00 in restitution. The primary issue raised on appeal is whether a person can constitutionally be held strictly liable criminally for issuing a "note" that is subsequently determined to be a security.[1]

FACTS

In December 1980, Black bought 640 acres of land near St. George, Utah for $2.5 million. Pursuant to the purchase agreement, Black was to make yearly installment payments of $250,000 plus interest, with a balloon payment of $1.5 million due in December 1985. Black intended to improve the parcel as a residential and country club development, which came to be known as Paradise Canyon. In order to facilitate financing of the project, four limited partnerships covering 80 acres each were formed, with Spearex International, Black's corporation, serving as general partner of each limited partnership. One of these limited partnerships was named Diamond B Bar Investment Partnership.

Black drafted the one-page document that the state has alleged to be a security. Each document consisted of two parts—a promissory note and an "option agreement." The note provided that the unnamed lender agreed to pay an unspecified sum at an unspecified time to Spearex at an interest rate of 12% per annum. The note itself was non-negotiable. The "option agreement" informed the unnamed lender that Spearex held a 25% limited partnership interest in Diamond B Bar Investment Partnership, and granted the lender "the option of exchanging the above promissory note for an assignment of _____ Unit(s) at $2,500 per unit" in the Diamond B Bar limited partnership "in lieu of payment of the above promissory note." The option was to remain open "during the full term of the promissory note or as long as the obligation under the note remains unsatisfied."

Black, who was not a licensed securities salesman, showed the documents to his attorney. Counsel told Black that the note could be used to borrow money from noncommercial lenders without violating state or federal securities laws. However, counsel told Black that, if the option were exercised, "we would have to take another look

---

1. Because we decide this matter on the constitutional issue, we do not reach the other issues raised.

at [the option] ... so that any securities issued to the lender under this option agreement would comply with the securities laws." Counsel testified that he understood the lenders were to be repaid out of a large construction development loan.

The document was never registered as a security. Black pre-signed about 60 documents as president of Spearex (signing the note and option portions separately), and gave them to Tober, who was involved in raising funds for the project. Tober conducted his own investment and tax counseling business out of his home, and had several hundred clients. He was licensed as a securities salesman in 1975, but let the license lapse after a year; he was licensed again in 1987. Tober was to receive a 5% finder's fee for each note that was executed.

Three of the four lenders involved in this litigation were clients of Tober's who had come to him seeking investment advice. Tober recommended that they lend money to Spearex, and all were "extremely excited" about the 12% interest rate. On December 1, 1984, Spearex sold note #1 to Beverly Beyer in exchange for $10,000, payable on December 31, 1985. That same day, Spearex sold note #2 to Robert Rice in exchange for $10,000, also payable on December 31, 1985. On August 4, 1986, Spearex sold note #3 to Joan Collins in exchange for $30,000, payable on August 3, 1987. Finally, on October 23, 1986, Spearex sold note #4 to Judy Wardle (aka Manning) in exchange for $5,000, payable on December 31, 1987. The money received pursuant to these four notes was used in connection with the Paradise Canyon project.

In the meantime, Black's ongoing efforts to obtain institutional financing for the project were, for the most part, unsuccessful. Spearex never repaid any of the four notes.

The jury was instructed to use a seven-factor test to determine whether the notes were securities. Defendants argued at trial that they were not. If the jury found the notes not to be securities, it was instructed that defendants had no duty to register the notes as securities or themselves as securities dealers. The jury found defendants guilty on all eight counts,[2] and defendants timely appealed.

## DISCUSSION

### *Sufficiency of the Evidence*

■ Defendants argue that the trial court erred in failing to grant their Rule 20 motion for a judgment of acquittal because there was insufficient evidence to support the convictions.

■ A judgment of acquittal is appropriate when there is no substantial evidence to warrant a conviction. *State v. Nunez,* 167 Ariz. 272, 278, 806 P.2d 861, 867 (1991). Substantial evidence is such proof as reasonable persons could accept as adequate and sufficient to support a conclusion of guilt beyond a reasonable doubt. *Id.* On review, we must view the evidence in favor of upholding the jury's verdict. *Id.; State v. Neal,* 143 Ariz. 93, 98, 692 P.2d 272, 277 (1984).

A.R.S. § 44–1801(22) defines "security" as meaning, among other things, "any note."[3] The jury was instructed on the following seven factors used to determine whether the promissory notes in this case constituted a "security" pursuant to A.R.S. §§ 44–1841 and 44–1842: (1) whether the transaction was a commercial loan or an investment; (2) whether the rate of return was fixed or fluctuating; (3) duration of the note as short or long-term; (4) percentage of monies borrowed to borrower's total assets; (5) circumstances at time of issuance; (6) contemplated use of the funds; and (7) collateralization. *See Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc.,* 583 F.2d 426 (9th Cir.1978).

■ Sharon Fox, an attorney with the securities division of the Arizona Corpora-

---

2. Defendants were also charged with one count of racketeering under A.R.S. § 13–2312, but were found not guilty of that charge.

3. At all times relevant to this litigation, "security" was defined at A.R.S. § 44–1801(20). *See* Laws 1990, ch. 216, § 1.

tion Commission, testified regarding the characteristics of these notes as securities under the *Amfac* factors. She testified that the fact that the notes were non-negotiable and were accompanied by the option agreement tended to make them securities. *Cf. Baurer v. Planning Group, Inc.*, 669 F.2d 770 (D.C.Cir.1981) (promissory note less than nine months in duration essentially an investment rather than a commercial transaction where funds advanced in anticipation of lender securing a limited partnership interest). Further, in her opinion, these were long-term, uncollateralized notes, had a high, fixed rate of return, and were used to generate funds for the purchase and development of real estate—characteristics that tended to make them securities. She also testified that courts tend to view as a security offerings made to more than one person, rather than a one-on-one transaction with one lender and one borrower. In her opinion, the notes involved here were "the classic form of a promissory note as a security."[4]

We acknowledge that, as defendants argue, some of the *Amfac* factors can be resolved in favor of these notes as non-securities. For example, we agree that no evidence was presented as to the percentage of the funds involved here to Spearex's total assets, and in fact Fox specifically testified that she could render no opinion as to that factor because she had not been provided with that information. We need not prolong this opinion with an exhaustive review of the evidence presented on each and every *Amfac* factor, however, because it is their combined effect that is important. *Amfac*, 583 F.2d at 432. Given this, and given our limited role in reviewing the deni-

al of a Rule 20 motion for acquittal, we find that sufficient evidence was presented to withstand defendants' motion.[5]

*Constitutionality: Vagueness*

■ Defendants argue that the statutory definition of "security" in A.R.S. § 44–1801(22) is unconstitutionally vague insofar as the issuance of "any note" is a criminal act under A.R.S. §§ 44–1841 and 44–1842. Section 44–1801(22) provides:

"Security" means *any note*, stock, treasury stock, bond, commodity investment contract, commodity option, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas or other mineral rights, real property investment contract or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

(Emphasis added). Defendants contend that although a security is clearly defined as "any note," it is universally accepted that not every note is in fact a security. Defendants contend that because no one could have known in advance under Arizona's statutory scheme whether the notes at issue here crossed that line from commercial transaction (non-security) to investment transaction (security), the statutes

---

**4.** Fox testified only on rebuttal, not during the state's case-in-chief. Nevertheless, we can consider Fox's testimony in determining this issue. We will not reverse the denial of a Rule 20 motion where the defendant later supplies sufficient evidence during his defense. *Nunez*, 167 Ariz. at 279, 806 P.2d at 868; *State v. Salazar*, 160 Ariz. 570, 571, 774 P.2d 1360, 1361 (App. 1989). Accordingly, we will not reverse where the state provides sufficient evidence in its rebuttal case.

**5.** The United States Supreme Court has recently rejected the *Amfac* test, adopting the Second Circuit's "family resemblance" test in determin-

ing whether a promissory note is a security under federal securities laws. *Reves v. Ernst & Young*, 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990). Although the *Reves* test has not been briefed in this matter, we note that we would similarly find sufficient evidence to support defendants' convictions under the *Reves* test. *Cf. Holloway v. Peat, Marwick, Mitchell & Co.*, 900 F.2d 1485 (10th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 386, 112 L.Ed.2d 396 (1990); *Amfac*, 583 F.2d at 431 (although circuits were split on analysis used, results reached in defining a security were generally consistent).

fail to specifically define the crime so as to give fair notice of what conduct is prohibited. This is particularly true, defendants contend, because §§ 44–1841 and 44–1842 are strict liability statutes for which there can be no exculpatory explanation for the criminal act. *See State v. Burrow,* 13 Ariz. App. 130, 474 P.2d 849 (1970) (A.R.S. §§ 44–1841 and 44–1842 are strict liability statutes).

In response, the state argues that the legislature is presumed to act constitutionally. *E.g., State v. Tocco,* 156 Ariz. 116, 119, 750 P.2d 874, 877 (1988); *State v. Serrano,* 145 Ariz. 498, 500, 702 P.2d 1343, 1345 (App.1985). The state contends that these securities statutes should be interpreted broadly because the legislature intended to provide broad protection to investors. Moreover, the state notes, Arizona courts have consistently upheld criminal convictions for violations of these same statutes. *E.g., State v. Barber,* 133 Ariz. 572, 653 P.2d 29 (App.1982), *approved,* 133 Ariz. 549, 653 P.2d 6 (1982); *State v. Baumann,* 125 Ariz. 404, 610 P.2d 38 (1980).

■ A penal statute is vague if it (1) fails to give persons of average intelligence reasonable notice of what behavior is prohibited, or (2) is drafted in such a manner that it permits arbitrary and discriminatory enforcement. *State v. Steiger,* 162 Ariz. 138, 141, 781 P.2d 616, 619 (App.1989). Although penal statutes require more precision than civil statutes because "the consequences of imprecision are qualitatively less severe" when a civil statute is concerned, due process does not require that a penal statute be drafted with absolute precision. *State v. Takacs,* 169 Ariz. 392, 395, 819 P.2d 978, 981 (App.1991), quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498–99, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982); *Steiger,* 162 Ariz. at 141–42, 781 P.2d at 619–20. A statute is not vague simply because one of its terms is not explicitly defined or because it is susceptible to more than one interpretation. *Takacs,* 169 Ariz. at 395, 819 P.2d at 981.

The definition of security in A.R.S. § 44–1801(22) is substantially similar to the definition under the federal securities laws. *Amfac,* 583 F.2d at 431; *see generally* 15 U.S.C. §§ 77b(1) and 78c(a)(10) (Supp.1991). Under federal law, "any note" plainly means "any note," and consequently is not vague in the abstract. *See Reves,* 494 U.S. at 65, 110 S.Ct. at 951 (because security includes "any note," every note is presumed to be a security); *Exchange Nat'l Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1137–38 (2d Cir.1976). *Cf. People v. Milne,* 690 P.2d 829 (Colo.1984) (Quinn, J., dissenting).

■ We agree with the federal law that the definition of "security" as meaning "any note" is not in and of itself vague. The vagueness problem arises because in reality, contrary to the definition, not every note is a security. Instead, the courts have fashioned elaborate legal tests to determine whether a particular note in any given case should be included within the laws intended to protect securities investors. *See Reves, supra; Amfac, supra. See also* Comment, *Commercial Notes and Definition of 'Security' Under Securities Exchange Act of 1934,* 52 Neb.L.Rev. 478 (1973). This dilemma is compounded in Arizona because one who is found by a jury to have violated those laws is held strictly liable without the state having to prove any level of intent. Consequently, a lack of intent to violate the law or good faith belief that the note in question was not a security is not a defense in Arizona, in marked contrast to federal law. *Compare* A.R.S. §§ 44–1481 and 44–1482 and *Burrow, supra, with* 15 U.S.C. § 77x (1981) and § 78ff (Supp.1991) (proscribing penalties for "willful violation") and *United States v. Rubinson,* 543 F.2d 951, 959 (2d Cir.1976), *cert. denied,* 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976) (in prosecution for conspiracy to sell unregistered securities, government required to prove that defendants knew of, or deliberately closed their eyes to, the necessity for registering stock before sale).

Thus, the constitutional question results from the combination of strict liability and the fact that, contrary to the statute's express terms, every note is not a security.

As expressed by Justice Newsom in *People v. Schock*, 152 Cal.App.3d 379, 199 Cal. Rptr. 327 (1984):

> [W]hat deeply concerns me is that, if we ourselves have such difficulty recognizing the character of these interests [promissory notes] as securities, is it fair to bring criminal charges against those who failed or were unable to do so?
>
> Convicting such persons of crimes on a "strict liability" basis seems to me not merely dubious, but wrong.

*Id.* at 391, 199 Cal.Rptr. at 334 (Newsom, J., concurring). In our opinion, Justice Newsom clearly identifies the crux of this issue: can the absence of an intent to violate the law render unconstitutionally vague an otherwise facially valid statute? Under certain circumstances, we believe so. As the United States Supreme Court has recognized in another context:

> [T]he requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid. The constitutional vice in such a statute is the essential injustice to the accused of placing him on trial for an offense, the nature of which the statute does not define and hence of which it gives no warning.... But where the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law. The requirement that the act must be willful or purposeful may not render certain, for all purposes, a statutory definition of the crime which is in some respects uncertain. But it does relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware.

*Screws v. United States*, 325 U.S. 91, 101–02, 65 S.Ct. 1031, 1035–36, 89 L.Ed. 1495 (1945) (citations omitted).

We have found no securities case, and none has been cited to us, where a vagueness challenge has been made in the context of a strict liability criminal statute. Nevertheless, we are convinced that the Supreme Court's observations in *Screws* are equally valid in this case. Whether a note that is made a security under the statute is in fact a security depends on the circumstances surrounding its issuance. To subject every issuer of a note[6] to potential incarceration in the state prison for up to five years based upon an after-the-fact determination is to place the commercial world at "risk on a vast uncharted sea." *Screws*, 325 U.S. at 98, 65 S.Ct. at 1033. That risk is substantially lessened if the note is issued with an intent to circumvent or with blind disregard for the law. One who acts intentionally or knowingly can hardly be heard to say he did not have fair warning that his acts were prohibited by statute. *See id.* at 105, 65 S.Ct. at 1037. Granted, requiring that an intent be shown does not make easier the factual chore of determining whether any particular note meets the legal definition of a security, but it does prevent the innocent from being caught in a trap sprung by a jury determination made long after the fact.

Before a statute is declared unconstitutional, this court must consider whether a limiting construction could cure the constitutional infirmity. *E.g., Steiger*, 162 Ariz. at 145, 781 P.2d at 623. In *Screws*, the Supreme Court avoided the constitutional dilemma by construing the word "willful" to imply an intent to do that which was prohibited by statute. 325 U.S. at 101–03, 65 S.Ct. at 1035–36. Unfortunately, we do not believe that we may avoid the constitutional taint of vagueness by interpreting Arizona's statutory scheme to include such scienter. A.R.S. §§ 44–1841

---

**6.** A.R.S. § 44–1843(8) exempts "[c]ommercial paper which arises out of a current transaction or the proceeds of which have been or are to be used for current transactions, which evidences an obligation to pay cash within nine months of the date of issuance or sale" from the registration requirements of §§ 44–1841 and 44–1842. Again, because not all notes exceeding nine months in duration are securities, this "exemption" does not resolve the vagueness issue; it merely compounds it.

and 44–1842 prescribe no culpable mental state that would allow us this freedom of construction. If a statute does not prescribe a mental state, no mental state is required and the offense is one of strict liability. *See* A.R.S. § 13–202(B); *Burrow, supra.* This court may not read into a statute something that the legislature has not put there. *Steiger,* 162 Ariz. at 145–46, 781 P.2d at 623–24. Although it is certainly within the legislature's power to make criminal certain acts without regard to the actor's intent, *State v. Thompson,* 138 Ariz. 341, 345, 674 P.2d 895, 899 (App. 1983), it is conversely within our power to strike down as unconstitutional violations of due process those enactments which fail to give fair notice of the conduct that has been criminalized.

Consequently, we hold that A.R.S. § 44–1801(22) defining security to mean "any note" as it relates to criminal prosecutions under A.R.S. §§ 44–1841 and 44–1842 is unconstitutionally vague in violation of the United States and Arizona Constitutions.[7] The convictions and sentences of both defendants are reversed.

EHRLICH, J., concurs.

EUBANK, Judge, dissenting.

I dissent. In reversing appellants' convictions, the majority holds that A.R.S. § 44–1801(22), which defines a security as "any note," is unconstitutionally vague, and I disagree.

"[A]ny note" means what it says: *any note.* A.R.S. § 47–3104 defines a note as follows:

A. Any writing to be a negotiable instrument within this chapter must:

1. Be signed by the maker or drawer; and

2. Contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this chapter; and

3. Be payable on demand or at a definite time; and

4. Be payable to order or to bearer.

B. A writing which complies with the requirements of this section is:

1. A "draft" ("bill of exchange") if it is an order.

2. A "check" if it is a draft drawn on a bank and payable on demand.

3. A "certificate of deposit" if it is an acknowledgment by bank of receipt of money with an engagement to repay it.

4. A *"note" if it is a promise other than a certificate of deposit.*

C. As used in other chapters of this title, and as the context may require, the terms "draft", "check", "certificate of deposit" and "note" may refer to instruments which are not negotiable within this chapter as well as to instruments which are so negotiable.

(Emphasis added.)

A.R.S. § 47–3102(A)(3) defines a promise as "an undertaking to pay and must be more than an acknowledgment of an obligation." If any aspect of negotiability in A.R.S. § 47–3104(A) is not met or the parties intended nonnegotiability, the note is nonnegotiable and interpreted as a simple contract to pay money. *Bickart v. Greater Arizona Savings & Loan Ass'n,* 103 Ariz. 166, 168, 438 P.2d 403, 405 (1968). Thus, the securities definition includes "any note" whether it is negotiable or nonnegotiable. However, the security statutes expressly exempt "any note" from being a security if it meets the criteria of A.R.S. §§ 44–1843, –1843.01, –1844, –1845, –1846 or –1847, but the burden of proving the existence of an exemption is upon the party claiming it. A.R.S. § 44–2033; *State v. Baumann,* 125 Ariz. 404, 412, 610 P.2d 38, 46 (1980). The promissory note in this case illustrates the reason that the legislature broadly defined a security as "any note." A representative note and option in evidence (Exhibit 27) reads as follows:

---

7. We specifically do not determine whether any constitutional infirmities exist with regard to prosecutions under §§ 44–1841 and 44–1842 in relation to any other type of security defined in § 44–1801(22), nor do we determine the constitutionality of the definition of security as meaning "any note" in relation to any section of Arizona's securities laws other than §§ 44–1841 and 44–1842.

## PROMISSORY NOTE

*Glendale, Arizona*
*December 1, 1984*

FOR VALUE RECEIVED, Spearex International promises to pay to Beverly A. Beyer or order thereof, the sum of Ten Thousand and no/100 ($10,000.00) Dollars with interest thereon from the date hereof until paid at the rate of twelve (12%) percent per annum. Principal and interest shall be payable in lawful money of the United States in one installment on December 31, 1985.

This Promissory note is non-negotiable and neither it nor the interest represented by it shall be assigned or transferred by the holder hereof. If default be made in the payment of this note requiring the holder hereof to place this note in the hands of an attorney for collection, then the maker and endorser hereof agree to pay, in addition to the principal and interest due hereon, reasonable attorney's fees.

> SPEAREX INTERNATIONAL
> Garth S. Black
> Garth S. Black, President

## OPTION AGREEMENT

THE PARTIES HERETO, as evidenced by their signatures below, have agreed as follows:

Spearex International is the holder of a twenty-five (25%) percent income Limited Partnership Interest in a certain Arizona Limited Partnership known as Diamond B Bar Investment Partnership. This Partnership owns approximately eighty (80) acres of undeveloped property in St. George, Utah more particularly described as:

> The South ½ of the Southeast ¼ of Section 11, Township 42 South, Range 16 West, Salt Lake Base and Meridian.

The above described Limited Partnership Interest owned by Spearex has been assigned to an account known as the Spearex Capital Account of which Spearex International is the Administrator.

Pursuant to the execution of the promissory note dated December 1, 1984, Spearex International has granted to Beverly A. Beyer the option of exchanging the above promissory note for an assignment of 4 Unit(s) at $2,500 per unit in the Spearex Capital Account in lieu of payment of the above promissory note.

The above referenced option shall remain open during the full term of the promissory note or as long as the obligation under the note remains unsatisfied. In the event the option is exercised, the promissory note shall be canceled, and all rights to principal and interest thereon are waived.

This option is not subject to assignment or other inter-vivos transfer.

> SPEAREX INTERNATIONAL
> Garth S. Black
> Garth S. Black, President
>
> AGREED TO AND
> APPROVED BY:
> Beverly A. Beyer 12-1-84
> Date

This promissory note is specifically restricted by its terms to be a "nonnegotiable" note that payee cannot assign or transfer. It is, therefore, a simple contract by Spearex International to pay money at 12% interest per annum to Beverly A. Beyer. As a part of this contract, Beyer receives an option to exchange the note, at any time before maturity, for an assignment of 4 units in the Spearex Capital account at $2,500 per unit. The capital account consists of 80 acres of undeveloped real property in St. George, Utah. An option agreement is defined as a promise that meets the requirements for the formation of a contract and limits the promisor's power to revoke an offer. RESTATEMENT (SECOND) OF CONTRACTS § 25 (1981). As noted above, the note and the option agreement are printed on a single page with the agreements interlocked by terms and conditions. For example, if the option is exercised, all rights to principal and interest due under the note are waived. Thus, it is clear from reading this note and option together that this contract is more than a nonnegotiable note, it is a device to obtain investors in the Spearex Capital account either by loan of funds, participation

in the development of the Spearex project or both.

In *State v. Goodman,* 21 Ariz.App. 252, 253, 517 P.2d 1299, 1300 (1974) we said:

> There is no dispute in the evidence that a security of some type was sold to Mrs. Steinel by the appellant. The complaining witness stated that it was a bond, while the appellant maintained it was really an exempt corporate promissory note. In either case, the item sold was a security within the definition of A.R.S. § 44–1801, subsec. 13.

(Footnote omitted.) The supreme court vacated our opinion on other grounds in *State v. Goodman,* 110 Ariz. 524, 526, 521 P.2d 611, 613 (1974), stating:

> The appellant contended that one cannot sell a nonexistent security and be in violation of A.R.S. § 44–1841 and § 44–1842. At the trial the State established that the company in question had no bonds registered with the Securities Division of the Arizona Corporation Commission. The Court of Appeals disagreed with this contention and so do we. We concur with the Court of Appeals' holding as to this point—that a seller who purports to sell "nonexistent" securities and never delivers them is subject to prosecution under our state securities laws, particularly since the applicable statutes include *offers to sell* a security within the criminal prohibition. *See Towne v. Friedrich,* 207 Cal.App.2d 205, 24 Cal.Rptr. 400 (1962).

Thus, although the supreme court agreed with our analysis of the bond or corporate security note issue as being a statutory security, they disagreed that the conviction had to be reversed and a new trial granted the defendant.

It is true that the vagueness issue was not raised in *Goodman.* However, it is also clear that the court held that even a "nonexistent" note or bond is sufficient under § 44–1841 and § 44–1841 to support a criminal prosecution. The reason for this holding is the public purpose behind the securities act. In *State v. Baumann,* in which corporate promissory notes were redeemable in nine months at 10% and 12%

interest, our supreme court, in affirming the Baumann's conviction for securities fraud, stated:

> Regulation of transactions in securities, commonly known as "blue sky laws," are designed to protect the public from fraud and deceit arising in those transactions. [Because] much of the public lacks the knowledge and sophistication of those who trade regularly in the securities marketplace, blue sky laws act as a buffer between purveyors of worthless securities and that segment of the public which can ill afford to fall victim to fraudulent investment schemes.

In *Jackson v. Robertson,* 90 Ariz. 405, 409–10, 368 P.2d 645, 648 (1962), we said:

> It is the capacity for harm and danger to the public as well as accomplished fraudulent transactions to which the Securities Act is directed. The Act is designed to be prophylactic if possible, remedial only if necessary.

Not only is fraud in the sale of a security a violation of A.R.S. § 44–1991, but the statutes requiring registration of securities and dealers are designed to make the possibility of fraud even more remote. *See* A.R.S. §§ 44–1841 and 44–1842. Unless a particular security or transaction falls within one of a few limited exemptions, all securities must be registered before they can be offered for sale and all dealers in securities must register with the Corporation Commission. Because of the vital public policy underlying the registration requirement, there must be strict compliance with all the requirements of the exemption statute. *State v. Goodman,* 110 Ariz. 524, 521 P.2d 611 (1974). The exemptions exist where the nature of the transaction or security exempted is either sufficiently protected from the possibility of fraud or where the need to trade freely in the exempted security outweighs the risk of fraud in the security or transaction.

125 Ariz. at 411–12, 610 P.2d at 45–46.

The California Corporation Code § 25019 defines a security in almost identical language to our A.R.S. § 44–1801, "any note." In *People v. Walberg,* 263 Cal.App.2d 286,

69 Cal.Rptr. 457, the court said, "The notes were securities because they were offered to the public to raise capital for the corporation's enterprise." *Id.* at 295, 69 Cal. Rptr. at 464; *see also People v. Schock,* 152 Cal.App.3d 379, 199 Cal.Rptr. 327 (1984); *United States v. Farris,* 614 F.2d 634 (9th Cir.1979), *cert. denied,* 447 U.S. 926, 100 S.Ct. 3022, 65 L.Ed.2d 1120. In *Schock,* the court concluded that the promissory notes were securities based on the Supreme Court's test in *SEC v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). *Schock,* 152 Cal.App.3d at 388, 199 Cal.Rptr. at 332. The court noted that California had taken its securities definition, "any note," from 15 U.S.C. § 77b and found the federal test useful in determining whether the notes were securities. The court quoted the test as

> "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." [*Howey*], 328 U.S. at 301, 66 S.Ct. at 1104. "The touchstone is the presence of an investment in a common venture premised on a reasonable expectations of profits to be derived from the entrepreneurial or managerial efforts of others." *United Housing Foundation, Inc. [v. Forman],* 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975).

152 Cal.App.3d at 387, 199 Cal.Rptr. at 331 (footnote omitted). It then analyzed a number of federal cases finding that the notes would be a security under federal and California law. It appears clear that under California law the note and options involved here would be a security subject to the California Act.

Our legislature also borrowed the statutory definition of a security as "any note" from the federal statutory definition of a security located at 15 U.S.C. § 77b. We, therefore, look to federal interpretations of securities law for guidance. *Daggett v. Jackie Fine Arts, Inc.,* 152 Ariz. 559, 565, 733 P.2d 1142, 1148 (App.1986).

The U.S. Supreme Court recently addressed this "any note" issue in *Reves v. Ernst & Young,* 494 U.S. 56, 110 S.Ct. 945,

108 L.Ed.2d 47 (1990). In *Reves,* an agricultural cooperative, to raise money to support its operations, sold demand promissory notes with a variable interest rates that adjusted monthly to keep the rate higher than the rate paid by local financial institutions. These notes were sold to both members and nonmembers. The main issue addressed by the court was whether the cooperative promissory note was a security defined by 15 U.S.C. § 78c(a)(10) to include "any note." The supreme court held that it was a security. In reaching its decision, the court reviewed the security definition, the purpose of the Securities Act, the congressional intent and the necessity for the broad language in combating the creation of "countless and variable schemes devised by those who seek to use the money of others on the promise of profit." *Id.* at 61, 110 S.Ct. at 949 (quoting *SEC v. W.J. Howey Co.,* 328 U.S. 293, 299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946)). The Court acknowledged that "any note should not be interpreted to mean literally any note but must be understood against the backdrop of what Congress was attempting to accomplish in enacting the Securities Acts." *Id.,* 493 U.S. at 63, 110 S.Ct. at 950 (footnote omitted). The Court discussed the various tests applied by the several courts of appeal and adopted the "family resemblance" test developed by the Second Circuit Court of Appeals. The Court said:

> The test begins with the language of the statute; because the Securities Acts define "security" to include "any note," we begin with a presumption that every note is a security. We nonetheless recognize that this presumption cannot be irrebutable. As we have said ..., Congress was concerned with regulating the investment market, not with creating a general federal cause of action for fraud.
>
> . . . .
>
> ... First, we examine the transaction to assess the motivations that would prompt a reasonable seller and buyer to enter into it. If the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note

is expected to generate, the instrument is likely to be a "security." If the note is exchanged to facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash-flow difficulties, or to advance some other commercial or consumer purpose, on the other hand, the note is less sensibly described as a "security."

... Second, we examine the "plan of distribution" of the instrument, *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 353, 64 S.Ct. 120 [124], 88 L.Ed. 88 (1943), to determine whether it is an instrument in which there is "common trading for speculation or investment," *id.* at 351, 64 S.Ct. at 123. Third, we examine the reasonable expectations of the investing public: The Court will consider instruments to be "securities" on the basis of such public expectations, even where an economic analysis of the circumstances of the particular transaction might suggest that the instruments are not "securities" as used in that transaction. Compare *Landreth Timber [Co. v. Landreth]*, 471 U.S. [681] at 687, 693, 105 S.Ct. [2297] at 2302, 2305 [85 L.Ed.2d 692 (1985)] (relying on public expectations in holding that common stock is always a security) with *id.* at 697–700, 105 S.Ct. at 2307–08 (Stevens, J., dissenting) (arguing that sale of business to single informed purchaser through stock is not within the purview of the Acts under the economic reality test). *See also Forman*, 421 U.S. at 851, 95 S.Ct. at 2060, Finally, we examine whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary. *See, e.g., Marine Bank [v. Weaver]*, 455 U.S. [551] at 557–559, and n. 7, 102 S.Ct. [1220] at 1224–25, and n. 7, [71 L.Ed.2d 409 (1982)]

We conclude, then, that in determining whether an instrument denominated a "note" is a "security," courts are to apply the version of the "family resemblance" test that we have articulated here: a note is presumed to be a "security," and that presumption may be rebut-

ted only by a showing that the note bears a strong resemblance (in terms of the four factors we have identified) to one of the enumerated categories of instrument. If an instrument is not sufficiently similar to an item on the list, the decision whether another category should be added is to be made by examining the same factors.

*Reves*, 494 U.S. 66–67, 110 S.Ct. at 951–52 (footnote omitted). Applying the test, the supreme court found that the co-op promissory note was "any note" and a security under the act. *Id.* at 67–68, 110 S.Ct. at 952–53.

Applying the *Reves* test to the facts *sub judice*, I come to the same conclusion. First, the corporation was attempting to raise money for its real estate development project and the payee was interested primarily in the 12% interest on the note; second, the issue was public; third, the reasonable perception of the payee was an investment; and finally, there were no real risk reducing factors to secure the investment. Indeed, the exercise of the option would cost the payee all of her principal and interest.

Finally, if the majority is correct, then logically the rest of the security definition in A.R.S. § 44–1801(22) is also unconstitutionally vague, such as, "any ... stock," "treasury stock" and "bond." However, I disagree and point out that our statutory definition has been retained in the newest Uniform Security Act § 16 (1985).

I would affirm appellants' convictions. The definition of a security as "any note" is not unconstitutionally vague.