**Lucia GOMEZ, et al., Plaintiffs,**

v.

**Fernando LEONZO, Juan Alvarado, Leonel Salinas, Jose Cortes, Alonso Montalvo, Defendants.**

**Civ. A. No. 90–3125.**

United States District Court, District of Columbia.

April 10, 1992.

---

Terrance G. Reed, Matthew Myers, David Gersch, Mark A. Jacobson, Scott S. Dahl, Washington, D.C., for plaintiffs.

Defendants are not represented by counsel.

Harvey L. Pitt, Washington, D.C., court-appointed amicus curiae.

Jacob H. Stillman, Lucina O. McConathy, Christopher Paik, S.E.C., Washington, D.C., filed brief.

## MEMORANDUM

GESELL, District Judge.

This case, which is now before the Court on plaintiffs' motion for partial summary judgment, is brought on behalf of a certified class of hundreds of customers of Latin Investment Corporation ("LIC"). Plaintiffs seek damages against certain key promoters of LIC—defendants Fernando Leonzo, Leonel Salinas, and Jose Cortes—for security frauds perpetrated against plaintiffs, as alleged in Counts One and Two of the second amended complaint.

A statement of unopposed material facts establishes, on the basis of extensive discovery, that a gross fraud was intentionally perpetrated against the plaintiffs, who in many cases are illiterate or unsophisticated Spanish-speaking members of the El Salvadoran community in this area. As a result of misrepresentations, material omissions, and blatant self-dealing on the part of LIC and the individual defendants Fernando Leonzo, Leonel Salinas, and Jose Cortes, the class lost over $6 million of savings that had been entrusted to LIC.[1]

Defendants have not challenged the truth of these facts; nor do they oppose the motion. They are not represented by counsel. The Court has therefore carefully reviewed the underlying materials supporting the statement of material facts, and finds them accurate. Only one issue of law remains.

The central question before the Court is whether or not, given the facts set forth in plaintiffs' statement, the passbook and accompanying documents issued to LIC customers when they first opened their accounts constitute a security as a matter of law within the meaning of the Securities Act of 1933 and the Securities Exchange Act of 1934. Because defendants no longer have counsel, the Court decided that this legal issue could best be resolved with the benefit of a court-appointed *amicus*. Harvey L. Pitt, Esquire, a partner of Fried, Frank, Harris, Shriver and Jacobson, was requested by the Court[2] to file as *amicus curiae*. The SEC, which is plaintiff in a related action, has filed an *amicus* brief supporting the position of the plaintiffs.

---

1. The company is in bankruptcy.

2. The Court requested Mr. Pitt to develop arguments in opposition to plaintiffs' position as part of his presentation. His willingness to undertake this amicus role on short notice and to respond in such a thorough and useful manner has reflected the best traditions of the profession and is greatly appreciated by the Court.

LIC's Articles of Incorporation stated that LIC would "represent, sell, act as agent, distribute, recommend and otherwise promote, investments suitable to the community it shall work with," and that it would "engage in any other management, activities or other functions necessary to support the business of the investment club." The three defendants mentioned above solicited funds for LIC from members of the class. In so doing, they knowingly and intentionally falsely represented that LIC was a bank. When plaintiff class members deposited money with LIC, they received in return a savings passbook and agreement. The customers were guaranteed a fixed rate of interest on all accounts, and were advised that by maintaining a minimum balance for a period specified, they would be eligible for dividends to be declared by the LIC Board of Directors from investment earnings. In addition to a fixed return and a share of the profits, passbook holders were led to understand that their funds would be pooled for investment purposes and backed by other funds or institutions.

Although defendants represented that LIC was a bank and led customers to think that they were putting money in a bank account, LIC's actual operations were not consistent in any respect with its being a bank. LIC operated a Ponzi-type scheme for its promoters. It neither earned nor paid interest. The funds were used by defendants for themselves and their friends, and not in any way for the customers' benefit. The business was not licensed as a bank and thus was wholly unregulated by the banking laws.

Defendants' use of the word "bank" was illegal and misleading, and it caused tragic results for many recent immigrants from El Salvador. The mere fact that LIC fraudulently used a term like "savings passbook" in order to lure investors is no reason to hold that the passbook and related documents were not, in effect, a security. To make that determination, the Court must examine the actual nature of those documents in terms of the definition of "security."

Based on current law, the savings passbooks must be considered securities within the meaning of both the 1933 and 1934 Acts, and thus subject to regulation and control under those Acts. The term "security" is defined in Section 2(1) of the Securities Act, 15 U.S.C. § 77b(1), and Section 3(a)(10) of the Securities Exchange Act, 15 U.S.C. § 78c(a)(10), specifically to include both "notes" and "investment contracts." These terms are broad and flexible, and are to be understood in the light of substance, not nomenclature. As the Supreme Court has stated,

> In defining the scope of the market that it wishes to regulate, Congress painted with a broad brush. It recognized the virtually limitless scope of human ingenuity, especially in the creation of "countless and variable schemes devised by those who seek the use of the money of others on the promise of profits".... [I]t enacted a definition of "security" sufficiently broad to encompass virtually any instrument that might be sold as an investment.

*Reves v. Ernst & Young,* 494 U.S. 56, 60–61, 110 S.Ct. 945, 948–49, 108 L.Ed.2d 47 (1990) (quoting *SEC v. W.J. Howey Co.,* 328 U.S. 293, 299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946)). To remain consistent with Congress' intent in passing these statutes, the legislation "should be construed broadly to effectuate its purposes.... [Thus, in] searching for the meaning and scope of the word 'security' in the Act, form should be disregarded for substance and the emphasis should be on economic reality." *Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967).

Here, the facts support the view that a conventional note and an investment contract are both involved. The savings passbooks evidenced the underlying agreement, which itself clearly constituted a debt instrument. There was a promise to repay, a guarantee of a specific rate of interest both short- and long-term, a pooling of funds, and an expectation of dividends to be earned from the investment over a period of time. The reality is that LIC was offering an investment deal, which merely had been falsely marketed to entice customers

who were widely solicited by interstate advertisement. There was a total lack of regulatory supervision or control over the operation. The fraudulent scheme, which was devised by LIC's founders, some of whom are defendants in this action, represented LIC to be an investment opportunity; and the defendants therefore must be held accountable consistent with the economic realities of the scheme.

Despite the fact that LIC often called itself a bank and even purported to adopt such conventions as a savings passbook, the organization was clearly a business venture established to raise money for investment. LIC held itself out as an investment concern, as its middle name indicates, and advertised in the phone book as "Latin Investments and Savings." In actual practice as well, LIC functioned as an investment business. Its customers were guaranteed a rate of return higher than that offered by banks and savings and loan companies; and even more tellingly, LIC offered its customers the prospect of earning dividends from investment of their pooled funds. LIC customers were also given the option of placing their funds in accounts that would be invested in local Hispanic-owned businesses. All of these factors suggest that LIC was issuing its customers securities. *Reves,* 494 U.S. at 67–70, 110 S.Ct. at 952–53; *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975); *SEC v. R.G. Reynolds Enterprises, Inc.,* 952 F.2d 1125, 1130–33 (9th Cir.1991); *Holloway v. Peat, Marwick, Mitchell & Co.,* 900 F.2d 1485, 1487–88 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 386, 112 L.Ed.2d 396 (1990).

LIC did not function as a bank and it had no authority to do so. There was no supervision or control over its affairs by either local or national banking authorities. On the contrary, the form investment agreement issued to its customers included very few of the provisions characteristic of · those categories of notes and banking instruments that have been judicially excepted from the definition of security. *See Reves,* 494 U.S. at 67–70, 110 S.Ct. at 952–53. LIC simply misrepresented itself as a bank in order to defraud unsophisticated investors. To suggest that because of its having misrepresented itself as a bank, LIC should have been able to avoid the banking regulations while it was in business, and should now be able to avoid the securities regulations by invoking the exceptions applicable to banks, flies in the face of Congress' intent, in enacting the securities laws, to regulate investment instruments not otherwise covered by the banking laws. *See Reves,* 494 U.S. at 67, 110 S.Ct. at 952; *Marine Bank v. Weaver,* 455 U.S. 551, 557–59, 102 S.Ct. 1220, 1224–25, 71 L.Ed.2d 409 (1982). Moreover, such a suggestion would foolishly ignore the economic reality of what was taking place. *See Tcherepnin,* 389 U.S. at 336, 88 S.Ct. at 553. As *amicus* Mr. Pitt notes, the SEC has in the past—in cases similar to the related case to this action—brought actions for violations of the federal securities laws based on a party's issuance of passbook accounts. *See* Brief of Harvey Pitt as *Amicus Curiae* at 14 n. 54. But rather than developing a blanket rule, the SEC has apparently left each situation to be judged on its own underlying facts and circumstances. No clearer case than the present one can be imagined for recognizing that a passbook and related customer agreements like those issued by LIC meet the definition of "security" under both the 1933 and 1934 Acts. A security was offered and purchased by deposit, and enforcement of the Acts is therefore consistent with Congress's intent in enacting those statutes.

### Conclusions of Law

Each of the defendants Fernando Leonzo, Leonel Salinas, and Jose Cortes was a controlling person within the meaning of 15 U.S.C. §§ 77o and 78t(a), both by reason of his power to control LIC and his active participation in developing and carrying out the fraudulent scheme.

Each of those defendants sold securities, as defined in Section 2(1) of the Securities Act and Section 3(a)(10) of the Securities Exchange Act, in the form of notes and investment contracts, and in so doing used the mail and instrumentalities of interstate

commerce by advertising investment services across state lines through radio, telephone listings, and otherwise.

Members of the class, in purchasing those securities, acted in reliance on misrepresentations and material omissions, which were made with the knowledge and approval of each of those defendants in connection with the sale of the securities. Plaintiffs thereby suffered monetary damage in the total amount of $6,461,266.91.

Accordingly, partial summary judgment is granted the class action plaintiffs as to Counts One and Two of the second amended complaint against defendants Fernando Leonzo, Leonel Salinas, and Jose Cortes. An appropriate Order is filed herewith.

### ORDER

For reasons stated in a Memorandum filed this day, after considering class action plaintiffs' Motion for Partial Summary Judgment on Counts One and Two of their Second Amended Complaint, which allege that defendants Fernando Leonzo, Leonel Salinas, and Jose Cortes violated Section 10(b) of the Securities Exchange Act of 1934 (and Rule 10b–5 promulgated thereunder), and Section 12(2) of the Securities Act of 1933, it is hereby

ORDERED that class action plaintiffs are granted partial summary judgment on Counts One and Two of their Second Amended Complaint in accordance with Rule 56 of the Federal Rules of Civil Procedure; and it is further

ORDERED that money judgments are entered against defendants Fernando Leonzo, Leonel Salinas and Jose Cortes individually in the amount of $6,461,266.91, representing the amount invested with Latin Investment Corporation by class action plaintiffs that has not been repaid; and it is further

ORDERED that defendants Fernando Leonzo, Leonel Salinas and Jose Cortes are deemed to be constructive trustees for and on behalf of the class action plaintiffs for all funds acquired from class action plaintiffs and funds or property acquired from the use of those funds.